(No. 33987.—

IRVIN J. JACOBSON, Appellant, *vs.* THE CITY OF EVANSTON *et al.,* Appellees.

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

Jacobson & Gilley, of Chicago, for appellant.

Rex Bullinger, Corporation Counsel, of Evanston, and Johnston, Thompson, Raymond, Mayer & Jenner,

of Chicago, (FLOYD E. THOMPSON, and PRENTICE H. MARSHALL, of counsel,) for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Plaintiff, Irvin J. Jacobson, appeals from an adverse judgment entered in the circuit court of Cook County at the close of plaintiff's case wherein he sought a declaratory judgment against the defendant city and the city prosecutor and an injunction restraining them from enforcing, as to plaintiff, the provisions of section 5c of the revised zoning ordinance of the city of Evanston adopted March 25, 1940. The trial court has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

Plaintiff is the owner of a 2½-story brick apartment building located at 1027 Hull Terrace in the city of Evanston. This building was erected in 1931 and acquired by plaintiff in October of 1953. At the time this action was filed, the building contained two 7-room apartments on the first and second floors and a 3½-room apartment in the basement, the latter being a use specifically prohibited by section 5c of the ordinance which limits such structures in the area to two-family occupancy and further provides for a lot area of not less than 2500 square feet per family unit where more than one family occupies the building. The subject property has a frontage of 39 feet on Hull Terrace and a depth of 153 feet 8 inches, or a total area of about 5993 square feet. Plaintiff's predecessor in title obtained a building permit in 1947 authorizing alteration of the building by the construction of three rooms in the basement "not to be used as a separate apartment" at a total cost of $500. Later it was discovered that the former owner was maintaining a 3½-room apartment in the basement. He was prosecuted for a violation of the ordinance and paid a fine of $100, after which the basement apartment facilities were removed and the rooms were occupied

by the owner's family. Plaintiff knew of the prosecution of his predecessor in title at the time he purchased the property. Shortly after he bought it he had a conversation with the city's building commissioner in which he was advised that the maintenance of an apartment in the basement of the property would constitute a violation of the ordinance. At that time he stated that he knew about zoning ordinances; and that he had successfully challenged them in Chicago on a number of occasions. He further stated, however, that he was living in the basement rooms only until his first floor apartment could be remodeled. The commissioner told him that this arrangement was satisfactory as long as one of the two apartments above was unoccupied. However in the summer of 1954, the city officials discovered that plaintiff was maintaining three apartments on the premises including a 3½-room unit in the basement, all of which were occupied by separate families. A complaint was filed against plaintiff in the city court of Evanston for violation of the ordinance on July 21, 1954, and, after a trial on the merits, plaintiff was found guilty and paid a fine of $25 and costs. He did not appeal. On September 28, 1954, a complaint was filed by the city charging plaintiff with the same violation. This case is still pending in the city court.

Plaintiff contends that the ordinance violates his State and Federal constitutional rights in that it restricts his property to two-family occupancy; that as applied to his property, it is arbitrary, unreasonable, capricious and confiscatory and bears no relation to the public health, safety or welfare; and that since the ordinance allows more intensive uses in the area, it operates to deny to plaintiff equal protection of the law and is unduly discriminatory. The principal question presented by this appeal is whether plaintiff's evidence was sufficient to sustain his complaint.

The plaintiff called two witnesses; a real-estate broker residing in the city of Chicago, who testified on plaintiff's

behalf, and the director of buildings of the city of Evanston, who testified as an adverse witness. Their testimony, together with the exhibits introduced, including the zoning ordinance and map, a plat showing the uses of nearby properties, and a photograph of the building on the subject premises, constitutes the entire record in the case. The zoning ordinance was adopted by the city in 1940, it being a revision of the earlier comprehensive ordinances adopted in 1921 and 1927. By its terms 10 land use districts are created. In the most restricted, designated "A" single-family dwelling district, single-family residences may be constructed on lots having an area of not less than 7200 square feet; educational, religious and gardening uses are also permitted. In the second district denominated "B" single-family dwelling, "A" uses and single-family dwellings on lots having an area of not less than 5000 square feet are permitted. Section 5 of the ordinance creates the "C" two-family dwelling district in question here. This section permits the "A" uses and two-family dwellings when the units are placed one on top of the other; group, row or town houses with not more than eight family units when the units are placed side by side; boarding and lodging houses, private clubs, educational institutions, nursing homes and hospitals. Insofar as those uses which contemplate more than one family unit are concerned, the ordinance requires that there be 2500 square feet of lot area per family unit. The fourth or "D" district permits multiple-family dwellings, including "C" uses and three-story apartment buildings with no limitation on the number of apartments. The fifth or "E" residential district allows apartment buildings to a height of seven stories, with no limitation on number of apartments, and hotels as well. The remaining classifications, F, G, H, I and J, refer to commercial, industrial, and unrestricted areas which are not pertinent here except insofar as they reflect the comprehensive nature of the city's zoning plan. The ordinance, of course, provides that uses

existing and lawful prior to its adoption may be continued.

Under the terms of the 1940 ordinance an area, bordered generally on the north by Simpson Street, on the South by Mulford Street, on the west by the corporate limits and on the east by a varying line comprised of Ridge Avenue and streets and alleys up to three blocks west of Ridge Avenue, was zoned almost entirely as a "C" two-family dwelling district. There are approximately 75 square blocks in this area. Plaintiff's property on Hull Terrace is situated near the south end of this extensive area. Hull Terrace is an east and west street about two blocks long extending from Ridge Avenue on the east to Asbury Avenue on the west. The subject property is on the north side of the street about one third of a block west of Ridge Avenue. The first street north of Hull Terrace is Austin Street; the first street south is Mulford. Barton Avenue is the first north and south street west of Ridge Avenue. It intersects Mulford, Hull and Austin. The first street west of Barton is Asbury. The west side of Ridge Avenue between Austin Street on the north and the alley between Hull Terrace and Mulford Street on the south is zoned for and improved with three-story apartment buildings which face Ridge Avenue. The area from the alley adjoining these apartments on the west and westward to Asbury Avenue is zoned for two-family residences as part of the "C" district. South of the alley between Mulford Street and Hull Terrace, the property between Asbury and Barton is zoned "C" but the property from Barton eastward to the alley west of Ridge is zoned "A" and improved exclusively with single-family residences. Four single-family uses also are found on the north side of Mulford from the alley east to Ridge Avenue.

In the particular block in which plaintiff's property is located, bounded by the alley west of Ridge on the east, Barton on the west, Austin on the north and Hull Terrace

on the south, all of the lots except two are improved with single or two-family dwellings in conformity with the zoning ordinance. The two exceptions are plaintiff's three-family use at 1027 Hull Terrace, and a three-story apartment building at 1127 Hull Terrace, which latter building is a legal nonconforming use, having been constructed in 1939 before the passage of the ordinance. In the entire block there is only one vacant lot. There are 27 complying single and two-family uses, including a two-family apartment being erected on the lot immediately east of plaintiff's property. The only other exceptions to single and two-family uses in the entire area of four blocks bounded by the alley west of Ridge on the east, Asbury on the west, Austin on the north, and Mulford on the south, are an apartment at 1223 Hull Terrace, which was erected in 1926, an apartment at 1208 Hull Terrace, which was erected in 1935, two apartments at 1211 and 1215 Mulford, which were erected in 1927, all of which are between Barton and Asbury Avenues, and a building at 1016 Hull Terrace, which is occupied by nurses of St. Francis Hospital. The four apartments last mentioned are legal nonconforming uses. The rooming house mentioned is permitted by the ordinance. Aside from the noted exceptions there are 50 complying single and two-family uses in the four-block area above mentioned in addition to the 27 already enumerated as obtaining in the block where plaintiff's property is located. Since the adoption of the 1940 ordinance, 16 structures have been built in this neighborhood, all of which comply with section 5.

The evidence further shows that the city officials have not tolerated violations of the ordinance. The commissioner testified that in addition to the prosecutions of plaintiff and his predecessor in title, the owner of 1107 Hull Terrace, who attempted to maintain three apartments in that two-flat building, was successfully prosecuted for violating the

ordinance, and thereafter complied therewith. There is no proof of uses in the entire 75-block area making up this extensive "C" district which violate the ordinance.

Other than his testimony as to the uses obtaining in nearby properties, plaintiff's expert witness offered little to assist the trial court in determining the issues presented. He testified that plaintiff's property had a market value of $30,000 but expressed no opinion concerning the value of plaintiff's property improved with the basement apartment. There is no proof in the record pertaining to the nature and extent of the facilities of the basement apartment, or the amount of rent, if any, received therefor. There is nothing before us from which we can infer that the plaintiff has suffered any special damage from the application of the ordinance, or that the subject property is not suitable for two-flat, two-family use. The evidence does not reveal the purchase price of the property, or that the plaintiff paid any more for it than was reasonable considering the uses permitted. From the record, we must conclude that the ordinance imposes no burdens on plaintiff, or his property, that are not common to the hundreds of other property owners and properties within the area included in the designated classification. The mere fact, if it is the fact, that plaintiff's property might be worth more if a more intensive use were permitted, is not of itself sufficient to invalidate the ordinance, as this is true in nearly every case where the use of private property is restricted by zoning legislation. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213; *Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162.) Plaintiff's contention that the ordinance is confiscatory and operates to deprive him of his property without due process of law must therefore be rejected.

Plaintiff further contends that the ordinance operates to deny him the equal protection of the law and that it bears no reasonable or substantial relation to the public

health, safety, morals, or general welfare. He bases this argument on the provisions of the ordinance itself, contending that since section 5c permits such uses as group, or row houses, accommodating not more than eight families, boarding and lodging houses, private clubs, educational institutions, nursing homes and hospitals, which uses he terms "more intensive" than two-family residences, the ordinance is unreasonable and void on its face. In this connection he relies on four decisions of this court: *Merrill* v. *City of Wheaton,* 356 Ill. 457; *Johnson* v. *Village of Villa Park,* 370 Ill. 272; *Harmon* v. *City of Peoria,* 373 Ill. 594; *Anderman* v. *City of Chicago,* 379 Ill. 236. Before analyzing these authorities which plaintiffs contends are determinative of this case, a recurrence to fundamental principles of law applicable to zoning cases is necessary.

When one challenges the validity of a zoning ordinance which has been adopted pursuant to legislative grant, it is incumbent that he prove by clear and convincing evidence that it is, as applied to him, arbitrary and unreasonable and without substantial relation to the public health, safety or welfare. (*People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350; *Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291; *Wesemann* v. *La Grange Park,* 407 Ill. 81.) A presumption always favors the validity of the ordinance. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213; *La Salle Nat. Bank* v. *City of Chicago,* 6 Ill.2d 22.) These rules of law are based upon a recognition of the principle that zoning is primarily a legislative function subject to be reviewed by the courts only for the purpose of determining whether the power, as exercized, involves an undue invasion of private constitutional rights without reasonable relation to the public welfare. (*People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321; *Morgan* v. *City of Chicago,* 370 Ill. 347.) In considering the validity of a given zoning ordinance, each case must be decided upon its own particular facts, having

due regard to the character of the neighborhood, the zoning classification and use of nearby properties, the extent to which property values are diminished by the particular zoning restrictions involved, and the gain to the public as compared to the hardships imposed on the individual property owner. (*Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91; *Galt* v. *County of Cook,* 405 Ill. 396.) This court has also always considered of paramount importance the question of whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213; *La Salle Nat. Bank* v. *City of Chicago,* 6 Ill.2d 22; *Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162.) The possibilities of infinite variations, which militate against the acceptance of any prior decision as absolutely dispositive of the issue presented, are inherent in zoning cases. The accepted principles can serve as reliable guides to a proper result only when carefully applied to the facts in evidence.

In each of the four cases relied upon by plaintiff, the ordinance was declared to be invalid under the particular facts presented. In *Merrill* v. *City of Wheaton,* 356 Ill. 457, the questioned ordinance permitted only single-family residences in the area in question along with public buildings of various sorts and boarding and rooming houses for not more than 16 persons. Plaintiff sought to convert his single-family residence to a two-family structure in a block in which the evidence showed that over 50 per cent of the use was already devoted to two-family structures. This court held that the application of the ordinance to the plaintiff resulted in unfair discrimination without any corresponding benefit to the public health, morals, safety or welfare. In *Johnson* v. *Village of Villa Park,* 370 Ill. 272, plaintiff sought to conduct a mortuary in an area zoned for single-family residences and other uses, including churches, temples, schools, hotels, private clubs, and boarding and

lodging houses. In that case there were only three buildings in the entire block in which plaintiff sought to establish his business, and part of the block, along with nearby areas, was zoned for business. We held the ordinance arbitrary and unreasonable as applied to plaintiff. In *Harmon* v. *City of Peoria*, 373 Ill. 594, plaintiff sought to convert his dwelling into a three-family residence in an area zoned for single families with provision for rooming and boarding house uses. The proof showed that in the block where plaintiff's residence was located less than half of the improvements were devoted to single-family uses, and that plaintiff's proposed use would not adversely affect surrounding properties which were mostly two- and three-family dwellings. Under those facts, we held the ordinance unreasonable in its application to plaintiff's property. In *Anderman* v. *City of Chicago*, 379 Ill. 236, the zoning restrictions in question prohibited a two-family dwelling in a small area which was surrounded by property zoned either for commercial or apartment uses. Plaintiff's property, on which single-residence restrictions were imposed, was near a busy street and adjacent to two apartments. The ordinance was held to be arbitrary and unreasonable. Thus in each of the cases cited by plaintiff it was apparent that the zoning restrictions sought to be applied to the subject property were not in conformity with surrounding existing uses. In at least two of the cases there was the further factor that the restrictions were not in conformity with zoning restrictions placed upon nearby property similarly situated. These situations are in marked contrast to the facts in the present case which clearly show that the restrictions are in conformity with surrounding uses and the zoning of nearby property. None of the cases relied upon can be considered as establishing the rule that if an ordinance permits uses within the district, in addition to those of a residential character, which the owner deems more detrimental to people and their property than his proposed

use, such additional uses render the ordinance void as applied to him and his property.

Such a contention was considered and repudiated by this court in the case of *County of Du Page* v. *Henderson*, 402 Ill. 179. In that case the position taken by plaintiff here was raised as a defense by defendants in an injunction proceeding which sought to restrain them from conducting a factory in a district zoned for residences and farming along with some 22 other uses. In discussing defendants' position we pointed out that the worth of their defense must depend on the evidentiary value of the circumstances of their situation with respect to the ordinance; that the fact that the ordinance permitted a large number of uses within the district which defendants deemed more detrimental to the people and their property could neither diminish nor enlarge their defense because those uses were not their uses; and that the defense merely amounted to challenging the wisdom of the zoning authorities with no proof to overcome the presumption of the validity of the ordinance. Likewise in *Jacobson* v. *Village of Wilmette*, 403 Ill. 250, the plaintiff sought to declare invalid the provisions of the village ordinance which created a single-family dwelling district because there were permitted in the same district boarding and lodging houses, farming and truck gardening, churches, schools, village halls, passenger stations and private clubs. In that case, at page 260, we held that plaintiff had offered no proof to overcome the presumption of validity, and sustained the ordinance, saying: "Appellants have not established their claim that there are a number of properties used as multiple-family dwellings near them, or even within the village limits, contrary to the ordinance provisions. On the other hand, it appears from the evidence that there are no illegal uses permitted. The territory within the boundaries fixed by appellants seems to be free from any illegal multiple-family use. Nor have appellants shown that other uses permitted

in the single-family dwelling district are unjust or such as to make the ordinances discriminatory against them. They have not shown the ordinances to be invalid." The above quoted language is as applicable here as it was in the case then before us, and we hold here, as there, that plaintiff has offered no proof sufficient to overcome the presumption of validity of the ordinance. Whatever impact the other permitted uses might have in a given situation, they have not been shown to have any substantial effect on plaintiff or his property in this case. Not even plaintiff's expert was prepared to say that the nurses' rooming house at 1016 Hull Terrace adversely affected the use of plaintiff's' property as a two-family dwelling, or in any way depreciated its value. This was the only use in the entire neighborhood other than single and two-family dwellings, with the exception of the nonconforming apartment uses which antedated the ordinance.

Plaintiff also challenges the validity of the provisions of the ordinance which require a minimum of 2500 square feet of lot space per family unit in cases of multiple-family use. Since we are of the opinion that plaintiff has not established the invalidity of the use regulations restricting his premises to two-family occupancy, and since the size of his lot is ample to meet the requirements of the ordinance for two-family use, we need not consider this contention.

The defendants have contended that plaintiff is precluded from raising the constitutional questions urged here because he did not suggest them in the proceedings in the city court of Evanston in which he was tried and fined for violation of the ordinance, no appeal having been taken from that judgment. Defendants urge, therefore, that the judgment of the city court is *res judicata* of the validity of the ordinance. Since we hold that the trial court properly decided the issues on motion at the close of the plaintiff's case, it becomes unnecessary to consider or decide the validity of this defense.

We conclude that the lower court properly dismissed the complaint and entered judgment for defendants at the close of plaintiff's case, and its judgment will be affirmed.

*Judgment affirmed.*