Guaranty Bank and Trust Company as Trustee Under Trust No. 10806, Cecil Mimms and Mildred Mimms, His Wife, Louis E. Robertson and Theresa Robertson, His Wife, and South Chicago Savings Bank as Trustee Under Trust No. 11–885, Plaintiffs-Appellants, v. City of Chicago, a Municipal Corporation, Defendant-Appellee.

Gen. No. 53,207.

First District, First Division.

June 23, 1969.

Leonard Bosgraf, of Chicago, for appellants.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiffs instituted this declaratory judgment action challenging the constitutionality of the Zoning Ordinance of the City of Chicago, as it applies to their subject property, and requesting that the trial court enter a decree permitting them to construct a gasoline filling station on the premises.[1] The trial court, sitting without a jury, entered a final judgment order finding the ordinance valid in its application to plaintiffs' property and entered judgment for the defendant. Plaintiffs appeal. No questions are raised on the pleadings.

The subject property, consisting of three lots, is located at the southeast corner of 71st Street and Vincennes Avenue in Chicago.[2] The parcel is irregular in shape, having frontages of approximately 154 feet along Vincennes

---

[1] The plaintiffs have exhausted all administrative remedies.
[2] Lot 10 on the south is vacant and owned by South Chicago Bank as trustee under Trust No. 11–885 since 1954. The southern half of lot 11 is owned by Louis E. Robertson and Theresa Robertson since 1960. The northern half of lot 11 is owned by Cecil Mimms and Mildred Mimms since 1953. Lot 11 is improved with two two-flat buildings approximately 60 to 75 years old. The remainder of lot 12 on the north abutting 71st Street, being the portion left over after a part of the lot was taken for the widening of 71st Street, is also vacant and is owned by Guaranty Bank and Trust Company, as Trustee under Trust No. 10806 since 1963.

Avenue and 137 feet along 71st Street. Vincennes Avenue is a major six-lane highway with dividers running northeast and southwest and intersecting 71st Street about 300 feet west of the interchange of the Dan Ryan Expressway. Seventy-first Street, which abuts the property on the north, is a major six-lane thoroughfare running east and west. The Shell Oil Company has options to purchase the subject property if it is rezoned to allow an automobile service station.

The subject property is included in and is within the jurisdiction of the Southeast Englewood Conservation Project. The plan of the urban renewal project contemplates that the property shall continue to be used for low density residential purposes. The boundaries of this project are 67th Street on the north, the Dan Ryan Expressway on the east, 75th Street on the south, and on the west an irregular boundary formed by the Chicago and Western Indiana Railroad tracks and by Yale and Princeton Avenues. Counsel for plaintiffs do not deny the validity of the Urban Community Conservation Act or the power of the City to designate conservation areas pursuant thereto. Nor do they have any disagreement with the purpose of urban renewal.

■ The threshold question in the case at bar is what scope of review is afforded to owners of property within a conservation district who contest a zoning restriction. The Supreme Court of Illinois was first confronted with the question as part of a broad scale attack on the constitutionality of the Urban Community Conservation Act (Ill Rev Stats, 1953, c 67½, pars 91.8–91.16) in the case of People ex rel. Gutknecht v. City of Chicago, 3 Ill2d 539, 121 NE2d 791. In approving the Act the Court stated that "[i]f the action taken by said [city] council in adopting a conservation plan be deemed unreasonable, oppressive, capricious or discriminatory, resort to the courts is available." People ex rel. Gutknecht

v. City of Chicago, 3 Ill2d 539, 549, 121 NE2d 791, 797. The scope of review under the Act was further clarified in Westfield v. City of Chicago, 26 Ill2d 526, 187 NE2d 208. There the Court stated:

> "a conservation plan is not sacrosanct, and the right to test the validity of zoning regulations included in such a plan is not destroyed, although the comprehensive study and planning involved in the creation of an urban renewal district is certainly a factor entitled to special consideration."

Westfield v. City of Chicago, 26 Ill2d 526, 530, 187 NE2d 208, 211. Thus, it seems clear that the plaintiffs in the instant case are not precluded from seeking judicial review of the Zoning Board's denial of their application for a zoning change merely because their property is within a conservation district.

■■■■■ In considering the validity of the zoning ordinance in its application to a particular site, each case must necessarily be decided on its own particular facts. The court must take into consideration the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished and the relative gain to the public as compared with the hardship imposed upon the owner. A zoning classification will be upheld if it bears a substantial relation to the public health, safety, comfort, morals and welfare. Where the question of its reasonableness as applied to a particular parcel of property is subject to a fair difference of opinion, the legislative judgment of the zoning authority should be followed. The presumption of validity is overcome, however, when it is shown that the ordinance results in the destruction of property values with an absence of any reasonable basis in the public welfare requiring the restriction and resulting loss. Wolfe v. Village of Riverside, 60 Ill App2d 164, 208 NE2d 833; La Salle Nat. Bank v. County of Cook, 28 Ill2d 497, 192 NE2d 909.

The subject property is located in a R–3 residential district which is bounded by Vincennes Avenue on the west and 71st Street on the north. Lot 11, in the center of the subject site, is improved with two two-flat buildings. Lot 10, which is the southern portion of the subject site, and lot 12, the northern portion abutting 71st Street, are vacant. The entire area to the immediate east and south of the subject property, and bounded by South La Fayette Avenue to the east, 75th Street to the south, Perry Street and Vincennes Avenue to the west is zoned and developed as a R–3 general residential district. All of the properties from 70th Street to 79th Street along the east side of Vincennes Avenue except for the plaintiffs' property and the large majority of those on the west side of Vincennes are zoned for business, commercial and manufacturing uses.

Directly west from the subject site, across Vincennes Avenue, at the southwest corner of the intersection of Vincennes and 71st Street, is a Standard Oil Service Station which was built 16 years ago. On the southeast corner of 71st Street and Wentworth Avenue, about one block from the Standard Station, is a Texaco Service Station. Directly north of the subject site, across 71st Street, at the northeast corner of the intersection of 71st Street and Vincennes, is a high-rise building containing 196 apartments on the upper floors and business uses on the ground floor.

The plaintiffs' witnesses testified that the fair cash value of the subject property under its current zoning classification is about $35,000. If the zoning classification is changed to allow an automobile service station the property would be worth $125,000. There was also testimony to the effect that since the Dan Ryan Expressway had opened, the traffic on 71st Street and Vincennes Avenue had increased markedly. Lastly, several of the plaintiffs' witnesses stated that the highest and best use of the subject property was for a filling station, while a

witness for the defendant testified that from a city planning viewpoint the highest and best use of the subject property would be medium density residential.

██ As stated above, a presumption of validity attends a zoning ordinance adopted pursuant to legislative intent. Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643. It is our opinion that the plaintiffs, as the parties attacking the R–3 classification, failed to sustain their burden of proving by clear and convincing evidence that the ordinance is arbitrary and unreasonable and that it is without substantial relation to the public health, morals, safety, and welfare, and that, therefore, they did not overcome the presumption of validity that attaches to a zoning classification.

██ Firstly, the fact that there would be an enhancement of the value of the subject property, if it were zoned to allow an automobile service station, while a factor to be considered is not decisive in determining the reasonableness of the existing classification. River Forest Bank and Trust Co. v. Village of Maywood, 23 Ill 2d 560, 179 NE2d 671; Jacobson v. City of Evanston, 10 Ill2d 61, 139 NE2d 205. The plaintiffs maintain that the courts of this State have consistently held that where the loss to the property owner caused by the zoning restriction is shown and there is no reasonable basis in the public welfare for the plaintiffs to suffer such a loss, the presumption of the validity of the ordinance is overcome, citing Marquette Nat. Bank v. County of Cook, 24 Ill2d 497, 182 NE2d 147; Fiore v. City of Highland Park, 76 Ill App2d 62, 221 NE2d 323.

In Marquette the Supreme Court held that the restriction of an area of 90 acres to single family residences on 20,000 square foot minimum lots was discriminatory, confiscatory, and unreasonable. On the particular facts in this case the Cook County Board of Zoning Appeals recognized that the subject tract could not be economi-

cally developed as a subdivision under the zoning classification. The trial court upheld the Board's decision. The Illinois Supreme Court affirming stated:

> "It is not the mere loss of value alone that is significant in this case, but it is the fact that the public welfare does not require the restriction and resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance fails and the presumption of validity is dissipated."

Marquette Nat. Bank v. County of Cook, 24 Ill2d 497, 502, 182 NE2d 147, 150.

In Fiore, the Appellate Court sustained the trial court's finding that the ordinance which restricted all of plaintiff's property to office and research uses did not bear a reasonable relation to public health, safety, comfort, morals or general welfare and was invalid as to plaintiff's land. There the plaintiff sought to have 300 feet in width of their land along Skokie Highway rezoned "G-1," for office and research use, and the balance of the 16 acre tract rezoned "F" for multiple construction. The Court held that under the circumstances the zoning classification given plaintiff's land served no public purpose and most certainly deprived the plaintiff's land of considerable value.

In the case before us, the plaintiffs have shown that their property would be worth a great deal more if it were zoned to permit an automobile service station. However, the plaintiffs have failed to convince us that there is no reasonable basis in the public welfare for this loss. Thus, the plaintiffs fail to come within the purview of the Marquette and Fiore cases.

█ Secondly, the fact that 71st Street and Vincennes Avenue are heavily traveled highways is not, of itself, decisive. Gans v. City of Chicago, 102 Ill App2d 456, 243

NE2d 400; Kellett v. County of Du Page, 89 Ill App2d 437, 231 NE2d 706. In Gans the trial court entered a decree permitting the construction of a gasoline filling station at the northeast corner of 95th Street and Michigan Avenue in Chicago two blocks from the Dan Ryan Expressway. The area had been zoned B1–1 local retail which did not permit the requested use. There the plaintiff's expert witnesses testified that a gas station was the highest and best use of the premises basing their opinion primarily on the existence of two gasoline filling stations across from the subject property and on the general business development on the south side of 95th Street. The Appellate Court reversed the Circuit Court and in doing so upheld the City's contention that although 95th Street is a heavily traveled highway, and although the subject property would be ideal for development as a gasoline filling station, nonetheless, 95th Street was reasonably employed by the City as a zoning district line between areas involving different uses.

The case at bar presents even stronger reasons to deny the plaintiffs the relief they seek than Gans. Not only did the plaintiffs in the instant case fail to persuade the trial judge of the merits of their case, a failing not shared by the plaintiff in Gans, but in the case before us another factor, the conservation plan, argues against granting the plaintiffs their zoning change.

Thirdly, the plaintiffs argue that the trend of development in the area adjacent to their property is toward commercial uses and that, therefore, the R–3 residence district classification is invalid. Western Terrace Bldg. Corp. v. Village of Palatine, 102 Ill App2d 116, 243 NE2d 566. Plaintiffs point out that the most recently constructed building in the area is the 18 story high-rise building directly across 71st Street from the subject property. It is stressed that this building containing 196 apartments on the upper floors and an insurance com-

pany office and barbershop on the ground floor dominates the entire area and is incompatible with the residential development of the subject site. The plaintiffs maintain that permission was granted to the owners of the high-rise in violation of the low density residential zoning recommended for the site by the Department of Urban Renewal "which the City now insists must nevertheless be enforced against the plaintiffs." The plaintiffs also direct this court's attention to the fact that the only other buildings constructed in the immediate area during the past 10 to 15 years have been the Standard Oil Station on the southwest corner of the intersection of Vincennes Avenue and 71st Street and the A & P Supermarket, immediately south of it. All of these developments, the plaintiffs argue, are commercial in character and emphasize the commercial trend of the area.

██ ██ We agree with plaintiffs that in Illinois a factor of paramount importance is the conformity of the existing zoning of the subject property with surrounding existing zoning and uses. Colvin v. Village of Skokie, 54 Ill App2d 22, 203 NE2d 457. We also agree that the trend of development in the immediate area of the property in question is an important consideration. Dixon v. County of Kane, 77 Ill App2d 338, 222 NE2d 354. We do not agree, however, with the plaintiffs' characterization of an 18 story high-rise with incidental businesses on the ground floor as a commercial use. Nor do we find helpful plaintiffs' assertion that there has been a trend away from residential development toward commercial when both developments they refer to (the Standard Oil Service Station and the A & P Supermarket), according to their own witness, occurred 16 years ago. In short, we find that there has been little or no development at all and certainly not enough to be able to say there is a trend toward commercial uses. Furthermore, we think the plaintiffs overlooked the salient fact that the subject

387

property is part of a series of continuous blocks bounded by Vincennes Avenue and Perry Street to the west, 71st Street to the north, South La Fayette Avenue to the east and 75th Street to the south that is zoned and developed as residential.

▪ Lastly, a factor which we consider of paramount importance is the fact that the subject property is within an urban renewal district. To invalidate the zoning classification at this time would tend to impair the status of the neighborhood. The plan is now in execution for future development in this area. There is evidence of properties acquired and demolished and to be acquired and demolished, because of substandard conditions and incompatible land uses. Prior to the beginning of the effectuation of the plan there had been no construction in the area for many years. Condemnation proceedings were resorted to in order to clear a C1–2 commercial site across the street from the subject property so that it might be converted to a residential site. There was testimony by Joseph Evans, Project Coordinator for the Department of Urban Renewal, that the site of the Texaco Station at 71st and Wentworth Avenue is now designated for use as a park. What was said in Berman v. Parker, 348 US 26 at page 33, we think is appropriate here:

> "We do not sit to determine whether a particular housing project is or is not desirable. The concept of the public welfare is broad and inclusive . . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as -healthy, spacious as well as clean, well-balanced as well as carefully patrolled. In the present case, the Congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them."

The United States Supreme Court went on to say:

"The particular uses to be made of the land in the project were determined with regard to the needs of the particular community. The experts concluded that if the community were to be healthy, if it were not to revert again to a blighted or slum area, as though possessed of a congenital disease, *the area must be planned as a whole.* It was not enough, they believed, to remove existing buildings that were insanitary or unsightly. *It was important to redesign the whole area so as to eliminate the conditions that cause slums*—the overcrowding of dwelling, the lack of parks, the lack of adequate streets and alleys, the absence of recreational areas, the lack of light and air, the presence of outmoded street patterns. It was believed that the piecemeal approach, the removal of individual structures that were offensive, would be only a palliative. *The entire area needed redesigning so that a balanced integrated plan could be developed for the region,* including not only new homes, but also schools, churches, parks, streets, and shopping centers. *In this way it was hoped that the cycle of decay of the area could be controlled and the birth of future slums prevented.* (Emphasis supplied.)

Berman v. Parker, 348 US 26, 34–35.

While the conservation plan is not sacrosanct, and the right to test the validity of zoning regulations included in such a plan is not destroyed, we cannot say that the plaintiffs have sustained their burden of proof to show that the ordinance results in the destruction of property values with an absence of any reasonable basis in the public welfare requiring the restriction and resulting loss. We believe that upon the particular facts in this case the ordinance does bear a substantial relationship to the pub-

389

lic health, safety, welfare and morals. The use of plaintiffs' property as an automobile service station would, in our opinion, be incompatible with the orderly development of the existing urban renewal plan.

For the foregoing reasons, the judgment of the Circuit Court is accordingly affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.