FIRST NATIONAL BANK OF SKOKIE, as Trustee, Plaintiff-Appellee, *v.* THE VILLAGE OF MORTON GROVE, Defendant-Appellant.

(No. 56801;

First District (3rd Division)—June 28, 1973.

*Rehearing denied July 26, 1973.*

Pedersen & Houpt, of Chicago, (Richard V. Houpt, Herbert J. Linn, and James K. Stucko, of counsel,) for appellant.

Leonard Bosgraf, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, First National Bank of Skokie, as trustee of certain realty, brought a declaratory judgment action in the circuit court of Cook County against the defendant, Village of Morton Grove, seeking a declaration that defendant's zoning ordinance was unconstitutional and void as applied to plaintiff's property. After hearing evidence, the trial court entered judgment declaring defendant's zoning ordinance to be invalid as it prevented the development of the property as proposed by plaintiff. On appeal, defendant contends that plaintiff failed to sustain its burden of proving the invalidity of defendant's zoning ordinance as applied to the subject property, and that plaintiff failed to sustain its burden of proving that defendant acted unreasonably and arbitrarily in refusing to rezone plaintiff's property so as to permit plaintiff's proposed use as an automobile service station.

The property in question is located at the southeast corner of Lincoln and Austin Avenues in the Village of Morton Grove. It has a 50 foot frontage on Lincoln and 125 foot frontage on Austin. Both Austin and Lincoln are four-lane streets, and the intersection is controlled by traffic lights.

The plaintiff also holds title to the two lots immediately to the east of the subject property, and it proposes the use of those two lots and the subject property as the site for the gasoline service station. Plaintiff had entered into a contingent contract with the Clark Oil and Refining Corporation providing that if plaintiff succeeded in obtaining a zoning change which would permit the development of the subject property, along with the two lots to the east, as an automobile service station, Clark would purchase the site for $50,000. The beneficial owners, Wil-

liam and Natoma Little, had acquired the subject property, the two lots to the east and other property on the block in 1965 for $60,000.

The subject property is zoned R-2, a single family residence classification, while the two adjacent lots to the east are zoned B-2, a service business district classification. A portion of the subject property is improved with a single family residence.

Plaintiff petitioned defendant for the rezoning of the subject property from R-2 to B-2. When the petition was denied, plaintiff brought this action. At the time plaintiff filed the petition, automobile service stations were permitted under B-2. Subsequently the zoning ordinance was amended making such stations a special use under B2.

The two blocks east of the subject property on Lincoln are zoned B-2 on both the north and south sides of the street. Immediately east of the subject property is a parking lot. As we have noted, it is owned by the Littles, and constitutes part of the site for the proposed Clark station. East of the parking lot and extending the rest of the block to Mason Avenue is a building, also owned by the Littles, housing a graphic arts business on the ground floor with a multiple family residence above.

On the block east of Mason on the south side of Lincoln are located a heating and air conditioning service and an auto parts store. East of these is a single family residence. The next block contains multiple family residences.

The north side of Lincoln for two blocks to the east and for over six blocks to the west is also zoned B-2. Directly across from the subject property, on the northeast corner of Lincoln and Austin, there is a Marathon Gas Station. Directly north of this service station is an auto tire and supply company, and directly east is another automotive supply company. East of the automotive supply company is a multiple family residence.

The next block to the east on the north side of Lincoln contains a multiple family residence, a florist shop and a small shopping center. In the shopping center, along with parking space, are a barber shop, a cleaner, a food mart, a chicken store and a laundromat.

An Arco service station is located diagonally from the subject property at the northwest corner of Lincoln and Austin. To the west of the Arco station, a 27 unit condominium was being constructed at the time of trial. Further west, at the northwest corner of Lincoln and Morton Avenues, is a one store medical office building. The next block west on the north side of Lincoln contains a television service shop and single family residences.

On the south side of Lincoln, the block directly west of Austin is zoned R-2 for single family use. However this block does contain a wholesale

liquor company as a non-conforming use. The subject property is the only property in the block in which it is located which is restricted to a single-family use.

Immediately south of the subject property is an alley, 16 feet in width, which runs between Austin and Mason Avenues, the next street to the east. South of this alley in an area zoned R-2, are single family residences. One block southeast of the subject property is an industrial district which extends into the Village of Niles; this area is zoned M, a limited manufacturing classification.

The following pertinent testimony was adduced at trial. William Little, the retired manager of the Graphic Arts business located in the same block as the subject property, testified that he and his wife were the beneficial owners of all of the property on the south side of Lincoln Avenue between Austin and Mason Avenues. Since the purchase, he had improved the residence located on the subject property and was receiving $200 per month rent. He further testified that in previous years the residence had been used for a butter and egg business. He and his wife had made extensive efforts to sell the property.

Natoma Little testified that for the last several years she and her husband had been offering the proposed gas station site for sale. They had received inquiries concerning multiple family development, but defendant had opposed such development. In prior years the residence on the subject property had been used by a cheese and egg business and later as a naprapath's office.

Nathan J. Rosenberg, the central region real estate manager for the Clark Oil and Refining Corporation, testified that the proposed location would be "very fine" for a Clark Service Station. He also noted that, although Clark stations are open twenty-four hours a day, only gas is sold; other auto service is not provided. Milk, ice or salt might also be sold at such a station. All lights, except at the pump and office, are extinguished at 11:00 P.M. Rosenberg also asserted that there were Clark stations with only 50 feet of frontage.

Norman Allen, construction manager for Clark, testified that the cost of construction of a Clark station at that site would be $55,000. A building containing a sales office, washrooms and a storage area would be constructed on the southeast corner of the parcel. The building would be entirely on the lots already zoned B-2; the subject property would contain the pump islands, several flood lights and display signs.

Neil King, a real estate consultant and appraiser, testified for the plaintiff. It was his opinion that the property took its character from the commercial development in the area, and that its highest and best use would be for an automobile service station. The nature of the intersection was

set by the two gas stations already present and the traffic flow at the corner was heavy. King further testified that as presently zoned and improved the subject property was worth $20,000.

William S. Lawrence, city planner and zoning consultant, test fied for the plaintiff that in his opinion Clark's proposed use would be the highest and best use of the subject property. Noting the limited service operation of a Clark station, he believed that a zoning change would be a logical extension of the B-2 zoning of the area immediately to the east and north, and that such an extension of B-2 would not be detrimental to other property in the area. Lawrence also stated that multiple family residential development would not be a compatible use for the subject property.

Carl L. Gardner, a city planner and zoning consultant, testified for defendant that both Lincoln and Austin were local collector-distributor streets and not major thoroughfares. The proposed site was too small for a service station and such a use would have a detrimental effect on the single family residences in the area. The existing gas stations at the intersection did not fit in with the character of the area. Gardner further testified that the highest and best use of the proposed Clark site would be for multiple family residential development. Defendant had designated the subject property R-2 and the remainder of the block B-2 on Gardner's recommendation. Gardner also testified that if he knew a business was being operated in the building on the subject property his recommendation may have been different.

Gregory Opelka, a real estate appraiser, testified for the defendant that in his opinion plaintiff's proposed use would have a detrimental effect on surrounding property, and that the highest and best use of the proposed site would be multiple family residence. He estimated that under such use the property would be worth $70,000.

James E. Wolfe, a real estate broker, testified for defendant that the highest and best use for the proposed site was multiple family, specifically a six unit apartment building. He believed that an automobile service station would have a detrimental effect on surrounding residential property.

Norton J. Sprague, owner of a residence across the alley from the subject property, testified for defendant that he purchased his home in reliance on the continued residential zoning of the subject property. He estimated that the construction of a Clark station on the site would depreciate the value of his property by ten percent. He also testified that the existing gas stations were not open on Sunday and closed at 9:00 P.M. during the week and earlier on Saturday. Both stations had been there for many years.

At the conclusion of the hearing, the trial judge found that both avenues were heavily travelled thoroughfares; that single family was not the best use of the subject property; and, that as to the subject property the ordinance was arbitrary, discriminatory and bore no reasonable relation to public health, safety and morals. He held that the ordinance was unconstitutional and invalid insofar as it prohibited the use and development of the subject property with an automobile service station as proposed by plaintiff. The trial judge, apparently referring to the testimony of defendant's expert witnesses, stated that defendant impliedly conceded that single family zoning was not proper for the subject property. The judge further observed that an apartment building could not be erected on the site without considerable variance from defendant's code, and specifically found implausible defendant's evidence that a multiple family residence would be worth $70,000.

Defendant first contends that plaintiff failed to establish the invalidity of defendant's existing ordinance as applied to the subject property. ■■ In an action to prevent the enforcement of a zoning ordinance as to a particular piece of property, the moving party has the burden of proving by clear and convincing evidence that the application of the ordinance is arbitrary and unreasonable, and that it has no substantial relation to the public health, safety and welfare. (*Exchange National Bank of Chicago v. County of Cook* (1962), 25 Ill.2d 434, 185 N.E.2d 250.) A presumption of validity always attaches to an existing zoning ordinance. (*Jacobson v. City of Evanston* (1956), 10 Ill.2d 61, 139 N.E. 2d 205.) However, when it is shown that no reasonable basis of public welfare requires the existing restriction, the ordinance fails and the presumption of validity is dissipated. (*La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill.App.3d 1040, 278 N.E.2d 114.) And where the testimony in a trial without a jury is contradictory, the weight to be given to that testimony is a matter for the trial court and its findings will not be disturbed unless manifestly against the weight of evidence. *La Salle National Bank of Chicago v. County of Cook* (1957), 12 Ill.2d 40, 145 N.E.2d 65.

■■ We find that the trial court correctly determined that defendant's ordinance as applied to the subject property is invalid and void. We agree with the trial judge's observation that in submitting proof by all of its expert witnesses that the highest and best use of the subject property was for multiple family residence, the defendant tacitly conceded that the property was not properly zoned. The trial judge also accurately characterized the zoning of the subject property as unusual. In determining the validity of zoning, primary importance should be given by the court to the conformity of the zoning restrictions on the subject prop-

erty with existing uses and zoning restrictions applicable to surrounding properties. (*Guaranty Bank and Trust Co. v. City of Chicago* (1969), 112 Ill.App.2d 378, 251 N.E.2d 384.) The subject property is the only parcel on the entire block zoned for single family residences. It abuts two heavily travelled streets, and the intersection is protected by traffic lights. Two of the uses closest to the subject property, sharing the same busy intersection, are automobile service stations. And it seems clear that the subject property gets its character from the many commercial and business uses in the area. And while it is true that Mr. Sprague's nearby single family residence will suffer some depreciation as a result of the zoning change to the subject property, his property would also suffer depreciation if defendant's proposed multiple family zoning were adopted.

Citing *First National Bank of Lake Forest v. Village of Northbrook* (1971), 2 Ill.App.3d 1082, 278 N.E.2d 533, defendant's second contention is. that plaintiff failed to establish that defendant acted arbitrarily and unreasonably in refusing to rezone the subject property to .permit plaintiff's proposed use. It argues that plaintiff's burden in this regard entailed proving that other possible alternative zoning classifications would also have been unreasonable and void.

■■ We believe, however, that after proving that an existing zoning ordinance is void as to the property in question, plaintiff's remaining burden is to show that its proposed use is reasonable. (*Sinclair Pipe Line Co. v. Richton Park* (1960), 19 Ill.2d 370, 167 N.E.2d 406; *Mangel & Co. v. Village of Wilmette* (1969), 115 Ill.App.2d 383, 253 N.E.2d 9.) In *Fiore v. City of Highland Park* (1966), 76 Ill.App.2d 62, 221 N.E.2d 323, this court stated at pp. 74-76:

> "What the plaintiffs are attacking in this court  *  *  *  . What they must challenge is the validity of existing zoning as applied to their land and not the validity or suitability of any other prior or possible alternative zoning classifications.  *  *  *  The most that a court may do after declaring an existing ordinance void as applied to certain property is to find that the specific .use contemplated by the owner is reasonable and may be. permitted."

■■ Courts must carefully avoid impinging upon the municipality's power to determine zoning classifications. (*Treadway v. Village of. Rockford* (1962), 24 Ill.2d 488, 182 N.E.2d 219.) We also recognize that in some circumstances a plaintiff may prove that existing zoning restrictions as applied are void, but would be unable to prove that a proposed use. is reasonable. We do not believe, however, that after determining .that. an existing zoning ordinance is void, the court, in deciding. whether. plaintiff's proposed use is reasonable, must consider whether all possible

alternative zoning classifications of the subject property also would be arbitrary and unconstitutional. Such an approach was considered and effectively disposed of by our Supreme Court in *Sinclair Pipe Line Co. v. Richton Park, supra.* At pp. 378-379, the court stated:

"Normally the land owner is interested particularly in a specific use which he proposes, and so it is natural that he will try the case and the judge will reach his decision in terms of the reasonableness of excluding that specific use. * * *

Because zoning cases are tried in this manner, two equally undesirable consequences may ensue if * * * the property is left unzoned as the result of a decree declaring a zoning ordinance void. The municipality may rezone the property to another use classification that still excludes the one proposed, thus making further litigation necessary as to the validity of the new classification. * * * The present case illustrates the other possibility: that a decree which was induced by evidence which depicted a proposed use in a highly favorable light would not restrict the property owner to that use, and he might thereafter use the property for an entirely different purpose.

In our opinion, it is appropriate for the court to avoid these difficulties by framing its decree with reference to the record before it, and particularly with reference to the evidence offered at trial. In most of the cases that have come before us in recent years, a specific use was contemplated and the record was shaped in terms of that use. In such cases the relief awarded may guarantee that the owner will be allowed to proceed with that use without further litigation and that he will not proceed with a different use.

* * *

It is objected that by this procedure the court goes beyond the realm of adjudication and itself becomes a zoning agency. But if the validity of a zoning ordinance is challenged by *mandamus* to compel the issuance of a building permit, a successful plaintiff is entitled to a judgment directing the issuance of a building permit in accordance with the plans and specifications he submitted."

■■ In the present case the trial court explicitly found that the existing ordinance was unconstitutional and invalid insofar as it prohibits the use and development of the subject property as an automobile service station as proposed by plaintiff. (See *Schultz v. Village of Lisle* (1972), 53 Ill.2d 39, 289 N.E.2d 614.) We must agree with the trial court's finding. As we have already observed, the subject property is located at an

intersection of two highly travelled avenues. It shares that intersection with two automobile service stations already in existence. The intersection is controlled by traffic lights. Such a use of the subject property also would be in conformity with the commercial character of Lincoln Avenue and the entire general area. After the trial court correctly found that the existing zoning restrictions as applied to the subject property were invalid, there was ample evidence to support the court's determination that plaintiff's proposed use of the property as an automobile service station was reasonable and that prohibition of such use would be unreasonable.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McGLOON, J., concur.