CARL W. RITTER *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF MORTON GROVE, Defendant-Appellant.

First District (5th Division)   No. 77-1383

Opinion filed March 30, 1979.

Martin C. Ashman, of Morton Grove (Gabriel S. Berrafato, Michael J. Samis, and Robert S. Soderstrom, of counsel), for appellant.

Burke, Weber & Egan, of Chicago (Edward J. Egan, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs filed a complaint for declaratory judgment asking that the Village Zoning Ordinance which classified their property as single-family residential be declared invalid as applied to their property. They also sought a mandatory injunction permitting the construction of townhouse units on the subject property. After a bench trial, the trial court entered judgment for the plaintiffs and ordered that they be allowed to construct 12 townhouse units. On appeal defendant contends that: (1) plaintiffs failed to overcome the presumption of validity attaching to the zoning ordinance, (2) the trial court invaded the legislative function by allowing plaintiffs to construct townhouses in a manner inconsistent with the existing ordinances, and (3) plaintiffs failed to demonstrate that the proposed use was reasonable.

The subject property is an "L" shaped parcel of just under 28,000 square feet which is located between Theobold Road to the north and Lincoln Avenue to the south. It has frontages of about 41 feet on Theobold Road and 112 feet on Lincoln Avenue. Lincoln Avenue crosses the Edens Expressway about four blocks east of the property.

The property is presently zoned R-2 single-family residence district and is improved with a two-story single-family frame residence and a garage. To the north, northeast, east and southeast are single-family residences in the same R-2 district, while directly adjacent to the northeast is a large greenhouse complex presently existing as a nonconforming use. A single-family residence directly to the east of the subject property is approximately seven feet from the lot line. A B-2 commercial use district is located to the west and southwest. Adjacent to the west is an automotive repair shop with an automobile storage lot. Further west along Lincoln Avenue are a fruit market, an automobile parts store, an office building and other commercial uses. Directly across Lincoln Avenue to the southeast are 16 townhouses.

The following pertinent evidence was adduced at trial.

*For the plaintiffs*
*Zariak Rabin, an architect*

His presentation to the Plan Commission included a building and landscaping plan for the property as well as feasibility and engineering

reports. Plaintiffs planned to construct 14 two-story, three-bedroom townhouses. Each townhouse would have a two-car garage. The proposed use would act as a "screen" between the automotive shop and a residential area to the east of the subject property.

On cross-examination he testified that he was familiar with B-2 special use zoning, which related to apartments and under which each apartment unit may contain only two bedrooms rather than three as in the proposal. He admitted that B-2 zoning permitted a maximum of 60 per cent ground coverage while his proposal would result in coverage of 72.6 per cent and further that while the Code required 29 feet between buildings his proposal allowed for only 25½ feet. He further admitted that his proposal failed to meet side yard requirements and he was not certain whether it met rear yard requirements since he was not able to "define a rear yard on this site." His proposal would not meet the B-2 special use requirements that noncombustible construction materials be used and that loading areas be provided. He conceded that under R-3 zoning, which is a multiple-family residential district, a maximum of 9.4 townhouses could be built. However, he did not know whether it would be "economically feasible" to build nine units.

The townhouses would be built about 10 feet from the east lot line, which he did not believe would be detrimental to the single-family residence to the east.

*William A. McCann*

He is a professional real estate appraiser and consultant and is familiar with the general character of the area surrounding the subject site. A two-story "farm-type" house which is approximately 85 or 90 years old presently stands on the subject site. Although this house is in "fairly good condition, it is reaching the end of its useful and economic life." The value of the subject property including the building would not exceed $50,000. The value of the property with the development of 12 single-family townhouses would be approximately $7,000 per townhouse or approximately $84,000. The value of the property with development of a 22-unit apartment building would be approximately $5,500 per unit or "in the range of $120,000." In his opinion the highest and best use for the subject site would be the construction of an apartment building with approximately 23 units. A reasonable alternative would be a complex of 12 to 14 townhouses contained in three separate buildings. A multiple-family use, either an apartment building or townhouses, would act as a "buffer" or transitional zone between the intensive commercial use to the west and the single family use to the east. A development of 12 to 14 townhouses on the property would be "totally compatible" with the adjoining uses and would not introduce a new use into the neighborhood since there are 16 existing townhouses across Lincoln Avenue. The

existing townhouses "have been accepted in this market" and have had no adverse effect on the nearby single-family residential use. The townhouses, acting as a buffer, would directly benefit the single-family homes to the east and would probably increase the marketability and market value of those homes.

He testified that the existence of Lin-Mar Motors, the automotive repair shop, to the west is detrimental to the development of an additional single-family residence. The market value of an additional single-family residence on the property would be less than the cost of construction. He further stated that the marketability would be impaired even if three single-family residences were constructed.

On cross-examination, he admitted that the property presently serves as a "partial buffer" between the single-family residences and Lin-Mar Motors. He admitted that the residents living in the house to the east of the subject property "may not like" the development of townhouses, but he did not believe such development would have an adverse effect on the market value of that house. He based his estimation that each townhouse unit would have a value of $7,000 on his "knowledge and experience," but he admitted he could not recall "the nearest comparable sale." He also admitted that it was possible that the village would require the property containing the greenhouses "to conform within a certain number of years" to single-family residential. He refused, however, to speculate on whether such a requirement would affect his opinion as to the suitability of the subject property for multiple-family use.

*Harriet Ritter on her own behalf*

She purchased a portion on the subject property in October, 1963, and the remaining portion later. She has been living there since making the original purchase. In the 14 years that she has lived on the property she has not observed the building of any new single-family residences within a "three block area along Lincoln on either side of" the subject property. She has, however, observed construction of a shopping plaza and a 29-unit apartment building in the area. She testified that as a result of the automotive body and fender shop to the west she is constantly exposed to fumes, paint odors, and "a great deal of hammering." Wrecked automobiles are delivered to the shop 24 hours a day, producing additional noise.

On cross-examination she stated that she had received no offers to purchase the subject property as presently zoned.

*For the Defendants*

*Donald Fisk*

He is a city planning consultant. He defined "compatible land use" from a planning point of view as two or more land uses placed together in

such a manner that none has an adverse impact upon another. Fisk was familiar with the subject site and described both the site and the surrounding area with the assistance of a land use map which he prepared. He described the area as "predominately residential." Lincoln Avenue is "basically a street of business character" to the west of the property. Lin-Mar Motors, directly west of the subject property, has an outdoor storage area for automobiles and parts and "would be incompatible with most land uses, except maybe a gas station or some other very noxious use." The principal use of the subject property is the single-family home which is located on the southeastern portion, away from Lin-Mar Motors. He was aware of alternative proposals for the property, including one for 14 townhouses and one for a 22 or 23 unit apartment complex. In his opinion such proposed uses would have an adverse impact upon the existing surrounding land uses, both presently and in the future. The townhouse proposal would appeal "to the family market." He estimated that 45 children and adults would live on the site. Only 27 per cent of the entire site would be "open-space" and there would be practically no on-site recreation area. The children would therefore be forced to leave the site for recreational activity. Additionally, there would not be sufficient space for visitor parking on the property. The proposed development would "over-crowd an area already congested with traffic" and would be a nuisance to the neighbors to the east. He denied that multiple-family development would act as a buffer between the houses to the east and Lin-Mar Motors to the west, but would instead expose a greater number of people to that "noxious" use.

In his opinion, the "most compatible use" for the subject site would be two lots with a minimum of 5,000 square feet each and each containing a single-family residence. The best alternative to that use would be to leave the property "entirely as it is." He stated that a "third alternative, which I think would be acceptable" as a land use would be to construct nine three-bedroom townhouses similar to those proposed by plaintiffs. Such a development "would be quite right from a site planning view," but the entrance to such townhouses should not be on Lincoln Avenue.

On cross-examination he stated that the Lin-Mar automotive shop is actually 25 or 30 feet from the property line of the subject site.

*Frank J. Muriello*

He is a real estate appraiser and consultant. The term "highest and best use" refers to that use which is most likely to "reasonably support continual use and value to the land consistent with the neighborhood."

He testified that he was familiar with plaintiffs' proposal and estimated the value of the property for such a use at $91,000. He appraised the value of the property under the present R-2 classification at $110,000.

In his opinion the highest and best use of the property would be five single-family lots. He based his estimates as to value upon comparable sales in the area. Two condominium developments in the area recently sold for "a little over $6,000" per condominium, while single-family lots in the area recently sold for $25,000 and $26,000. In his opinion either townhouse or apartment development would have a "negative impact" on the residential area and would decrease the value of the properties to the immediate east 5 to 10 percent.

On cross-examination he admitted that a variance from the village would be required to build five single-family residences as he suggested. Such a change would, however, probably be granted. He also admitted that none of the comparable sales which he reviewed were next to an automobile body and paint shop.

Following the presentation of evidence and closing arguments the trial court found that the zoning classification was "an arbitrary and capricious act and a deprivation of the Ritters' rights under the constitution." The trial court further found that the highest and best use for the property would be 12 townhouse units.

OPINION

Defendant first contends that plaintiffs failed to establish the invalidity of the existing ordinance as applied to the subject property.

■■ Although a presumption of validity attaches to all zoning ordinances (*Jacobson v. City of Evanston* (1956), 10 Ill. 2d 61, 139 N.E.2d 205), governmental restrictions on the use of private property may be upheld only when those restrictions bear a substantial relationship to the preservation of public health, safety, morals or general welfare. (*People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 157 N.E.2d 33.) The party challenging a zoning ordinance must prove by clear and convincing evidence, that the ordinance as applied to the subject property is arbitrary and unreasonable and is not substantially related to the general public welfare. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 312 N.E.2d 625.) While the validity of a zoning ordinance must be determined under the facts of the particular case (*Kaszynski v. City of Peru* (1975), 30 Ill. App. 3d 470, 333 N.E.2d 618) in *La Salle National Bank of Chicago v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69, our supreme court set forth the following factors to be considered in determining whether the presumption of validity has been overcome:

(1) The existing uses and zoning of nearby property;

(2) the extent to which property values are diminished by the particular zoning restrictions;

(3) the extent to which the destruction of plaintiff's property values promotes the health, safety, morals or general welfare of the public;

(4) the relative gain to the public as compared to the hardships imposed on the individual owner;

(5) the suitability of the subject property for the zoned purposes; and

(6) the length of time the property has been vacant as zoned considered in the context of land development of the area in the vicinity of the subject property.

While no individual factor is controlling (*La Salle National Bank of Chicago v. County of Cook*), of paramount importance is the question of whether the subject property is zoned in conformity with surrounding uses and whether those uses are uniform and established. (*Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402, 178 N.E.2d 358.) Here, the testimony and exhibits indicated that the subject property is located within a general area containing multiple-family and single-family as well as commercial uses. The property is bordered by both single-family and commercial zoning districts. Considering the variety of surrounding uses and zoning classifications, the neighborhood cannot be readily characterized.

With respect to the second factor, the extent to which the value of the property is diminished as a result of the zoning ordinance, we note that McCann appraised the property as presently zoned at $50,000 and for 12 townhouses at $84,000. Muriello stated that the property is presently worth $100,000, but that it would be worth only $91,000 if used as plaintiffs proposed. He also testified that the property would be worth $110,000 should the village allow a variance permitting five single-family homes on the property. The testimony of the witnesses as to the ordinance's effect upon value was conflicting. The trial court, sitting as the finder of fact in a zoning case, is the judge of the credibility of witnesses and the weight to be given their testimony. (*First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589, 299 N.E.2d 570.) The trial court here found that the value of the property for use as proposed greatly exceeds the value as presently zoned and, in so finding, implicitly rejected Muriello's testimony. We cannot say that the court's finding is against the manifest weight of the evidence.

The next factors for consideration, which are closely related, are the extent to which destruction of plaintiffs' property values promotes the public health, safety, morals or general welfare and the relative gain to the public as compared to the hardship imposed upon the owner. Again, we note that the testimony on this point was conflicting. McCann testified that the existing townhouses across Lincoln Avenue had no adverse effect upon the nearby residential area and that the proposed use would actually

be an improvement over the present use. Fisk and Muriello both testified that the proposed use would detrimentally affect the surrounding area. However, Fisk also stated that an "acceptable" alternative to one single-family home would be the development of nine three-bedroom townhouses. We do not believe defendant established that the ordinance was necessary for promotion of the general public welfare. Similarly, we do not believe the defendant demonstrated that the proposed use would place a burden upon the public sufficient to outweigh the hardship which the ordinance imposed upon the plaintiffs. Moreover, it appears that the public interest would actually be served by the creation of additional family housing. See *Stalzer v. Village of Matteson* (1973), 14 Ill. App. 3d 891, 303 N.E.2d 489.

The final factor of relevance in this analysis is the suitability of the property for the zoned purpose. As our supreme court has stated, "[t]he law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare." (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65, 69-70.) As we have previously discussed, the trial court here properly found that the present classification results in a great decrease in value, but bears no substantial relationship to the public health, safety and welfare. We believe the record clearly indicates that single-family residential zoning is inappropriate for the subject property. Of substantial consideration is the presence of Lin-Mar Motors directly to the west. Lin-Mar was described by one of defendant's witnesses as being "incompatible with most land uses, except maybe a gas station or some other very noxious use," and plaintiffs' witness McCann testified that the presence of Lin-Mar is detrimental to the development of an additional single-family residence on the subject property.

Moreover, even defendant's own witnesses did not agree as to the best use for the subject property. Fisk stated that two single-family residences would be the "most compatible use" but that nine townhouses would be an acceptable alternative. Muriello, however, testified that the best use for the property would be five single-family residences which, he admitted, would require a variance from the Village.

■ Having carefully reviewed the record before us in light of the above factors, it is our opinion that the trial court correctly concluded that the presumptive validity of the zoning ordinance had been overcome.

■ The defendant next challenges the relief granted, contending that the trial court invaded the legislative function by allowing construction of 12 townhouses in a manner that would not conform to the zoning requirements pertaining to townhouses. However, defendant has mistakenly presumed that in considering whether to permit the requested

use the court must choose which of the existing zoning classifications to apply to the subject property. This court recently declared that "such a treatment of this issue would constitute amendment of the village zoning ordinance, a practice expressly forbidden to the courts." (*Chicago Title & Trust Co. v. Village of Skokie* (1978), 61 Ill. App. 3d 219, 226, 377 N.E.2d 1253, 1258.) The role of the trial court in such cases is to determine whether the proposed use is reasonable. (*Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406; *First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589, 299 N.E.2d 570.) The plaintiff need not, of course, prove that all other possible zoning classifications would be unreasonable. (*La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 369 N.E.2d 1363.) In determining the question of reasonableness the trier of fact is in a superior position to that of the reviewing court and, where the evidence is contradictory, the findings of the trial court will not be disturbed unless against the manifest weight of the evidence. (See *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) In the instant case the trial court's order permits construction of 12 townhouses in three groups of four each. The suitability of the subject property for such development is adequately shown by the mixed character of the neighborhood and by the presence of 16 townhouses just across Lincoln Avenue to the southwest. Moreover, we note that defendant's witness Fisk testified that 9.4 townhouses would be an acceptable alternative to single-family residential use. Based upon the record before us, we cannot say that the trial court's order allowing construction of 12 townhouses was clearly against the manifest weight of the evidence.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.