(No. 36274.—

LA SALLE NATIONAL BANK, Trustee, Appellant, *vs.* THE CITY OF PARK RIDGE *et al.*, Appellees.

*Opinion filed Sept. 22, 1961.—Rehearing denied Nov. 29, 1961.*

GOLDBERG & LEVIN, of Chicago (MAYER GOLDBERG and BURTON BERGER, of counsel,) for appellant.

HERBERT R. STOFFELS, of Chicago, (WARREN L. SWANSON, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The La Salle National Bank, as trustee, owns a parcel of land in the city of Park Ridge. It applied to the zoning board of appeals of the city for a rezoning of the tract, but after a hearing the board recommended to the local legislative body that the application be denied. By its amended complaint, the plaintiff sought a declaratory judgment that the present zoning ordinance is invalid as applied to its property. The superior court of Cook County upheld the validity of the ordinance and the plaintiff has appealed. The trial judge has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court. Ill. Rev. Stat. 1959, chap. 110, par. 75(1)(c).

The property in question lies between Busse Highway and Northwest Highway, about a mile northwest of the center of the main business district of Park Ridge. At this point the two highways are roughly parallel, about 600 feet apart, and they run in a northwesterly direction. Each is a heavily traveled four-lane highway. The next paved street to the southeast of plaintiff's property is Greenwood Avenue, and the next street to the northwest is Western Avenue. Greenwood and Western are north and south streets, about 1900 feet apart.

The property involved is situated within the rough parallelogram formed by these four streets. It has a frontage of 220 feet on the south side of Northwest Highway, and it is 270 feet deep. It was purchased in 1956 for no more than $30,000 as indicated by the amount of United

States revenue stamps affixed to the deed. For a depth of 130 feet it is zoned for two-family residential use, and the balance is zoned for single-family residential use. The plaintiff proposes to erect an apartment building containing 56 units.

To the northwest, immediately adjoining plaintiff's tract, there is a large shopping center with numerous shops and parking space for 400 cars. The shopping center, with its parking areas, runs entirely through the block, from Northwest Highway to Busse Highway. It has a frontage of 400 feet on each highway and three entrances from each. The rear of plaintiff's tract, toward Busse Highway, is bounded by Rabe Avenue, which is platted as a street, but is not paved or otherwise improved. It runs only 220 feet, the width of plaintiff's tract, from the boundary of the shopping center to Delphia Avenue. The remaining area to the rear of plaintiff's property, from Rabe Court to Busse Highway, is occupied by a relatively new warehouse type building occupied by Kjos Music Co. No witness was able to describe the activity carried on in this building. On the southeast, plaintiff's tract is bounded by Delphia Avenue, which is another platted street which is not paved or otherwise improved. Next to Delphia Avenue is a greenhouse which has a frontage of approximately 250 feet on Northwest Highway, and runs more than half-way through the block toward Busse Highway. To the rear of the greenhouse, fronting on Busse Highway and next to the Kjos Music Co.'s building, is the new office building of the American Society of Anesthesiologists. The balance of the southeastern portion of the block, to Greenwood Avenue, with a frontage of 100 feet on Northwest Highway and nearly 600 feet on Busse Highway, is vacant except for what a witness for the defendants described as a "very old" house at the corner of Northwest Highway and Greenwood Avenue. The portion of this area that fronts on Northwest Highway is zoned for two-family residential use; that

which fronts on Busse Highway is zoned for commercial use, and that which fronts on Greenwood Avenue is zoned for single-family residential use.

The portion of the block that lies northwest of the shopping center is devoted to a variety of uses. Adjoining the shopping center, with a frontage of 60 feet on Northwest Highway, is a 40 to 45-year-old residential-type frame building with a four-car garage constructed of concrete blocks. Nearby are gasoline pumps. There is a dispute as to the present use of this property. Northwest of it is a 60-foot strip used as an access driveway to a group of lodge buildings of the American Legion which front on Western Avenue. Northwest of the American Legion driveway, and fronting on Northwest Highway for approximately 250 feet, is a parcel of land improved with three single-family residential structures 35 to 40 years old, and a two-flat building erected in 1955. North of these residences there is a triangular shaped miniature golf course at the southeast corner of Western and Northwest. It has a frontage of nearly 550 feet on Northwest Highway and about the same on Western Avenue. At the corner is a "shack" used in conjunction with the operation of the miniature golf course.

Most of the frontage along the east side of Western is occupied by the miniature golf course and the American Legion buildings. The northeast corner of Busse and Western is vacant. On the west side of Western Avenue there is a 33-family apartment building at the northwest corner of Western and Busse, and along Western between Busse and Northwest there are six apartment buildings. Five of them contain five apartments each, and the sixth contains 14 apartments. Across Northwest Highway, at the northwest corner of Western and Northwest, there is a combination real-estate office and a pick-up depot for a dry-cleaning establishment. At the southeast corner of that intersection there are two new duplexes. On Northwest Highway, op-

posite the driveway to the American Legion buildings, there is a building described as an old farm house; opposite the plaintiff's property there is a two-flat building, and at the northwest corner of Greenwood and Northwest there is a single-family dwelling.

Each party called as witnesses an expert in zoning and city planning and a real-estate broker familiar with the area in question. The plaintiff's real-estate broker testified that as presently zoned the property was worth $34,000, and the defendant's that it was worth $53,665. They agreed that the property would be worth more if it was zoned to allow the construction of 56 apartments, the plaintiff's witness testifying to a value of $100,000 to $112,000, and the defendants' to a value of $84,000. The plaintiff's witness also testified that such a development would have no adverse effect on the market value of the surrounding property, and the defendants' witness did not suggest the contrary.

When the tract was purchased in 1956, the adjoining tract now occupied by the shopping center was vacant. The frontage on Northwest Highway was zoned for two-family residences, the interior for single-family residences, and the Busse Highway frontage for commercial uses. Shortly thereafter the city changed the zoning to permit construction of the shopping center, and at about the same time the zoning of the property along Western Avenue was changed from a single-family to multi-family use. The plaintiff's zoning expert testified that the introduction of the shopping center and apartments, and the fact that other properties in close proximity were used for commercial purposes, had operated to make the present zoning of the plaintiff's property unreasonable, and that its best use would be for multiple-family structures. He described Northwest Highway as the transition line between the commercial and apartment developments on the southeast and the single-family uses to the northwest, and said that the two-family zone on

the northwest side of the highway served as an appropriate buffer.

The defendants' zoning expert testified that the entire area lies in the path of a surge of growth northwest out of Chicago, that the present zoning was consistent with this process of growth and development and that in general the nearby uses fit into the over-all pattern. He testified that the property was presently zoned for its highest and best use, and that the shopping center is as compatible with two-family use as it would be with respect to apartment use. He characterized the present use of the property in the area bounded by Busse, Northwest, Greenwood and Western as "very definitely residential" except for commercial uses on Busse.

Although the maps introduced into evidence by each side were not in exact agreement as to the dimensions of the area bounded by Busse, Northwest, Greenwood and Western, and of the various parcels of property comprising that area, certain facts are clear from those maps, coupled with the testimony of the witnesses. Thus it appears that, excluding the plaintiff's property with its frontage of 220 feet, less than 25 per cent of the property fronting on Northwest Highway is devoted to uses which can be classified as residential in character. Similarly excluding the plaintiff's property, and considering area instead of frontage, less than 10 per cent of the total area of the block, and less than 15 per cent of that area which is not vacant, is used for residential purposes.

The factors to be considered in determining the validity of a zoning ordinance are familiar, and need not be fully restated. They include the use and zoning of nearby property, the character of the neighborhood and the gain to the public as compared to the hardship imposed upon the property owner. *Herman* v. *Village of Hillside,* 15 Ill.2d 396, 402-403; *La Salle National Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40, 46-47.

While the zoning experts disagreed as to whether the shopping center should be classified as a "neighborhood" or a "community" center, what is important is not its classification in those terms, but its effect upon the plaintiff's property next door to it. When the plaintiff bought its tract, the part of the shopping center area that adjoins it was zoned for single-family and two-family residential use. Shortly thereafter, the city rezoned to permit the construction of the shopping center, a commercial facility that dominates the entire block. While the miniature golf course and the greenhouse were described as "temporary" and "transitory" uses by the defendants' zoning expert, he conceded that the greenhouse had been there 50 or 60 years. Both are nonconforming uses under the 1928 zoning ordinance of the city, and can hardly be regarded as temporary.

With the shopping center located as it is, it is obvious that no significant additional traffic would result from the construction of an apartment building on the plaintiff's property. There was no contention that the present zoning of that property operates to protect or conserve the values of other property within the area. The value of plaintiff's property is decreased substantially by its present zoning classification and the fact that there has been an increase in value even under that classification is not controlling. In our opinion the zoning ordinance, as applied to the plaintiff's property, is unreasonable, and it is invalid insofar as it prohibits the construction of apartments of the kind permitted under the provisions of the ordinance governing the use of commercial property.

The decree of the superior court of Cook County is reversed and the cause is remanded with directions to enter a decree in accordance with this opinion.

*Reversed and remanded, with directions.*