**The Exchange National Bank of Chicago, as Trustee Under Trust No. 17922, and the Pure Oil Company, an Ohio Corporation, Plaintiffs-Appellees, v. The Village of Skokie, a Municipal Corporation, Defendant-Appellant.**

**Gen. No. 51,730.**

First District, Fourth Division.

September 11, 1967.

Harvey Schwartz, Corporation Counsel, of Skokie (Morton C. Kaplan, Assistant Corporation Counsel, of counsel), for appellant.

Paul Peter Black, of Chicago, for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant, Village of Skokie, appeals from a judgment which found that its zoning ordinance is null and void as applied to plaintiffs' property and which enjoined defendant from interfering with plaintiffs' construction of a gasoline station.

Suit was initiated by the Main Building Corporation and the Pure Oil Company, the latter having purchased the property from Main Building Corporation subject to the condition that it be rezoned to permit the construction of a gasoline station. The complaint prayed that defendant be enjoined from preventing the use of plaintiffs' property as a gasoline station.[1] The cause was referred to a master in chancery who held hearings and took testimony and made a report of his findings to the court. The court entered its judgment overruling defendant's objections and exceptions to the master's report, approving the report and entered the judgment appealed from. During the proceedings before the master, Main Building Corporation was dissolved and its interest transferred to a nominee and then to The Exchange National Bank of Chicago, as Trustee, which was substituted as a plaintiff in lieu of Main Building Corporation.

Plaintiffs' vacant property consists of about 15,825 square feet and is located on the southwest corner of Church Street and East Prairie Road in Skokie. The property fronts approximately 168 feet on Church Street; has a straight north and south line of 125 feet in length for its west boundary; runs east some 85 feet along the first east-west alley south of Church Street and has its eastern boundary along diagonal East Prairie Road for some 150 feet.

Traffic on Church Street is described as moderately heavy. It is a collector road and funnels traffic into main

---

[1] The subject property is zoned B–1. A gasoline station is not permitted under a B–1 zoning classification but is permissible under a B–3 classification.

routes. The speed limit on Church Street is 30 miles per hour. Traffic on East Prairie Road is moderate to light. It has four lanes but narrows to two poorly paved lanes north of its intersection with Church. The intersection has stop signs on all corners but no stoplights. The master described the general area and its zoning as follows:

> Starting several blocks to the west of the property, and going east, the streets running north and south are Lawndale Avenue; then Central Park, Drake, Lincolnwood, Forest View, Ewing, Morgan and then McCormick Boulevard in that order. Starting from a point north of the subject property, and going south, the streets are Emerson, Lyons, Church, Arcadia, Davis and Grove. East Prairie Road runs diagonally across the area, from south west to north east.
>
> About in the center of this entire large area, the Village has created a B–1 zoning district. This B–1 category is designated as a Neighborhood Shopping District and permits various retail or service uses such as book stores, dry goods stores, meat market, parking lot, etc. . . .
>
> Except for this B–1 area, the zoning ordinance of the Village of Skokie has designated the entire large area above described as being zoned R–1 or R–3. R–1 is the Skokie designation which permits only single-family dwellings. R–3 permits construction of two-family units.

Since 1930, the subject property has been part of the area zoned B–1 Neighborhood Shopping District from which gasoline stations are explicitly excluded. Main Building Corporation purchased the subject property in 1946 or 1947.

The actual land uses in the B–1 area at the time of the decree and immediately thereafter [2] are as follows: Immediately west of the subject property along Church Street is Motive Parts of America (which sells auto parts and has small lathes and other machines for adjusting and fitting the auto appliances). To the west of Motive Parts, across Lincolnwood Drive, and fronting on Church Street are seven townhouses, each containing four living units. Crossing Church Street at this point, on the north side, there is a vacant lot. Proceeding to the east is a building occupied by United Rent-All and A. and W. Lawn Mower Service. United rents trailers and small trucks and party equipment such as tables and dishes. A. and W. fixes trucks as well as lawn mowers. Both use the parking lot for storage purposes. The next use to the east is Haggerty and Associates, commercial artists who also do offset printing. To the east of this, on the northwest corner of the intersection, is a vacant lot comprising 140,000 square feet. On the east side of East Prairie Road, starting at the northeast corner of the intersection, is the Garry Honduras Restaurant. North on East Prairie are the Heinz Landscaping and Evanston Landscaping companies. Further north are Lennox Heating and Air Conditioning and Pelfacs, Inc., an assembler of metal products.

Proceeding east from the intersection on the north side of Church Street next to the Honduras Restaurant is the Whitehouse grocery and package liquor store. East of this is a store building recently erected (in compliance with B–1 zoning) containing an art studio and a dictaphone sales and service store. Crossing to the south side of Church Street there is Murphy's grocery and package liquor store. To the west, on the southeast corner

---

[2] By stipulation after decree one of the noncomplying uses (Bix Furniture) was shown to have been abandoned.

of the intersection, is a shopping center containing a small grocery store, a barbershop, a beauty shop and the Presentation Furniture Store.

██ The basis of plaintiffs' complaint is that the land uses in the B–1 area were largely inconsistent with B–1 zoning and that therefore the B–1 classification was unreasonable and discriminatory. Plaintiffs' expert testified on February 22, 1965, (prior to the effective date of a 1965 amendment to the zoning ordinance) that 87% of the B–1 district was devoted to nonconforming uses and that 13% was devoted to conforming uses.[3] Defendant's expert (after explaining his strict usage of the word "non-conforming") testified that 28.7% was vacant, 13.3% nonconforming residential, 6.5% nonconforming commercial, 30% illegal use and the balance (about 21.5%) conforming. The master found 28.7% vacant, 14% conforming and the balance (57.3%) nonconforming.

After the master submitted his report, proofs were reopened to permit the introduction into evidence of exhibits showing a disuse of premises formerly used in contravention of the zoning ordinance. Two uses (Acorn Motors and A. & M. Towing) were restrained by court order in another proceeding and the premises comprising 12% of the B–1 area were vacated. Another use (Zera Construction) was abandoned and the property vacated; other noncomplying uses were rectified by the removal of stored mechanical equipment. Therefore by taking into account these changes [4] (and the abandonment by Bix

---

[3] A nonconforming use is a continuation of a lawful use existing at the time of the adoption of an ordinance though not in conformity with the new ordinance. Jacobson v. Village of Wilmette, 403 Ill 250, 85 NE2d 753. Throughout the master's reports and appellees' briefs the term "non-conforming" is applied not only to those uses which are nonconforming under this definition but to uses which are illegal or do not comply with the ordinance.

[4] In his supplemental report, the master concluded that these changes did not require any modification of his findings. How-

Furniture after decree) we find that at least 40% of B-1 was unoccupied, 13.3% nonconforming residential, 6.5% nonconforming commercial and about 11% nonconforming.

According to plaintiffs, the principal violator of the zoning ordinance is Motive Auto Parts. It sells auto parts and adjusts automotive parts to specific sizes for its customers. Two small lathes are used. Plaintiffs urge that this use is of the same classification as a gasoline station and that therefore under the finding in Colvin v. Village of Skokie, 54 Ill App2d 22, 203 NE2d 457, it is mandatory that both uses be given equal treatment. In Colvin, the abutting use was a gasoline station and therefore it was held unreasonable to preclude another gasoline station.

In Exchange Nat. Bank v. Village of Skokie, 86 Ill App 2d 12, 229 NE2d 552, we held that a combined automatic car wash, gasoline service station, accessory store and automobile diagnostic center was similar to and compatible with a gasoline service station that washed cars manually and with other uses existing in the area.

In the instant case, one of defendant's experts testified as to the effect of a gasoline station:

> The proposed gasoline station is a heavier use as compared to the existing legal nonconforming uses. It generates a larger volume of vehicular traffic.
> It is a more intensive use, a larger paved area, a greater intensity of lighting, a greater amount of noise generated from the gas station site, a greater

ever, in sustaining an objection to the effect of removal of the used car lot (Acorn Motors) the master stated: "If all of these uses were changed, you would have a different zoning case."

In ruling on a similar objection to a question as to whether the correction of storage uses by landscaping companies would eliminate one of the influences, the master sustained the objection stating that it clearly would.

413

amount of exterior displays of pennants, signs, and the general character that is associated with a service station as opposed to a prime retail outlet.

Another stated:

If the subject site is developed for a gasoline station it is my opinion that it would cause a five to ten percent loss in value to the residences on the west side of East Prairie Road that are immediately adjoining. Also, it would result in approximately a five percent loss in value to the homes that are in direct visual view of the service station on the east side of East Prairie Road.

My reasons for that opinion are the noises, the fact that the service station might or might not be open 24 hours a day, the traffic congestion and the smells that are produced by a modern service station.

The testimony of the experts as to uses was based upon visual observation of premises from the exterior. In some instances they peered through windows and in others based conclusions on advertising signs. We do not believe that in an area only 60% occupied a gasoline station is a use compatible with (1) residences, (2) nonconforming commercial uses such as sale of liquor in a grocery store, a furniture store (Presentation Furniture) which became a B-3 use under a 1965 amendment or (3) noncomplying uses which consist of a printing press in an art and design studio; small lathes in an auto parts store; assembling of metal products; rental of trucks and party equipment; and lawn mower service.

 A zoning ordinance is presumed to be valid. In Exchange Nat. Bank of Chicago v. County of Cook, 25 Ill2d 434, 185 NE2d 250, the court said at page 440:

Before a court will intervene it must be established by clear and convincing evidence that the ordinance,

as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. [Citing cases.] Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. [Citing cases.]

■ In the instant case, the subject property which was purchased 20 years ago has been zoned B–1 for over 35 years and although there are some nonconforming residential and commercial uses and some noncomplying uses, the plaintiffs have not proven by clear and convincing evidence that the ordinance is invalid because the land uses are largely inconsistent with B–1 zoning.

After pointing out that there was a difference of opinion among the experts as to the highest and best use, the master found that a gasoline station would be the best and highest use, predicating his finding in part "upon the present condition" of the B–1 area. He stated:

> The defendant Village has permitted the intrusion of non-conforming [sic] uses into the B–1 area for some time past. As the area exists today, the present zoning of B–1 is incongruous and arbitrary. It is true that the defendant Village has made, and apparently is making, a belated effort to eliminate the nonconforming [sic] uses as evidenced by the decree above noted by the master. However, this effort would appear to be too little too late.

As we have already pointed out, the term "non-conforming" was used by the master to denote both nonconforming and noncomplying or illegal uses. In County of Du Page v. Henderson, 402 Ill 179, 83 NE2d 720, the trial court enjoined defendant from using his property for industrial purposes in a farming zone where estates and residences are permitted. The defense contended that the ordinance was unconstitutional. The evidence showed that defendants had operated a manufacturing business on adjacent property in violation of the ordinance. The Supreme Court in affirming the injunction stated at page 188:

> The fact the ordinance permitted a large number of uses within the district, which the appellants deemed mcre detrimental to the people and their property, can neither diminish nor enlarge their defense, for those other uses are not theirs. The fact that nonpermissive uses are carried on by others contrary to the ordinance neither fortifies nor weakens the case of appellants, but each alleged violation of the ordinance is a complete case within itself and must stand or fall upon the facts and circumstances of that case alone. The appellants charge in this court that the classification of their property as non-industrial in the ordinance amounts to a capricious invasion and an unreasonable invasion of their property rights. The presumption of the validity of that classification must be overcome by proof made by defendants which is clear and convincing. (City of Springfield v. Vancil, 398 Ill 575.) The defendants have not supplied the proof required.

We cannot find that the noncomplying uses in this case can be used as a fulcrum for declaring a zoning ordinance arbitrary and void. The defendant has sought

to preserve the integrity of its zoning by the enforcement of its ordinance. Since the commencement of this suit it enjoined some noncomplying uses and caused others to be abandoned by threat of court action. By continuing this aggressive attitude it can eradicate all the noncomplying uses. Nor can we be unmindful of the fact that should plaintiffs prevail, the zoning of the vacant property on the opposite northwest corner (140,000 square feet) could be attacked on the basis that a gasoline station is then permitted on the southwest corner.

 Finally, defendant contends that the court erred in denying its special defense of "prior adjudication." The master found that the parties and issues in the two cases were different and that there was no showing that a change in conditions had not occurred. Defendant filed no objections to the finding or conclusions of the master and therefore the finding and conclusions are not subject to further review. Roeder v. Pipe, 235 Ill App 89, 109.

The judgment of the Circuit Court declaring the zoning ordinance null and void and enjoining defendant from interfering with plaintiffs' construction of a gasoline station is reversed and the cause remanded to the trial court with directions to dismiss the complaint.

Reversed and remanded with directions.

ENGLISH, P. J. and McCORMICK, J., concur.