ANTHONY SCHMITT *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF SKOKIE, Defendant-Appellee.

(No. 55338; ■■■■■■■■■■■■■

First District—May 5, 1972.

*Rehearing denied July 25, 1972.*

Robert Marks, of Chicago, for appellants.

Harvey Schwartz, Corporation Counsel, of Skokie, for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiffs appeal from a judgment upholding the validity of defendant Village's zoning ordinance as it applies to the subject property and denying plaintiffs' prayer for relief that the property be used as a site for a multiple dwelling development.

Plaintiffs in this action are Anthony and Dorothy Schmitt, the present owners of the property, and Katz-Weiss Construction Corporation which has contracted to purchase the property subject to the condition that it be rezoned to permit the construction of a multiple dwelling unit.

On appeal plaintiffs contend that the court's decision was against the manifest weight of the evidence.

The subject property is located on the northeast corner of Church and Drake Streets in Skokie. Church Street runs east and west, and Drake Street north and south. The property is about 85,000 square feet (about two acres) and rectangular in shape, the longer sides running parallel to Drake Street. It is presently zoned B-1 Neighborhood Shopping District, except for a narrow rectangular piece along the western border which is zoned R-1 Single Family Residential. There is currently a single family structure and a garage on the B-1 portion of the site. The R-1 portion is vacant. Plaintiffs seek approval to construct thereon a four story apartment building, 36 feet high, with 131 parking spaces of which 38 will be inside the building. There would be 93 apartments consisting of 61 one-bedroom apartments and 32 two-bedroom apartments. The building would cover one-third of the total ground space and would have sufficient plantings and screenings to preclude visibility from adjacent properties. There would be a circular driveway with the entrance and exit on Church Street and no driveways on Drake Street. It is unquestioned that the proposed structure would comply with the requirements under the defendant Village's R-4 Multiple Dwelling zoning classification.

The land uses and zoning districts surrounding the subject property are as follows: Immediately to the north and west are R-1 Single Family Districts, occupied by single family dwellings. To the south, directly across Church Street, are seven multiple family structures (townhouses) each containing four dwelling units; these units are non-conforming uses in the B-1 district. Beyond the townhouses to the south is an R-1 district containing single family dwellings. The subject site and the most western townhouse in effect form the western boundary of the B-1 Neighborhood Shopping district. The remainder of the B-1 district lies to the east of the subject property and the townhouses and runs for about three blocks. The land uses within the B-1 district are as follows: Directly east of the subject property is Latex Rent-All, a leasing business occupying 54,000 square feet. It is a non-conforming use under the B-1 classification. The business rents trailers, mixers, chain saws and other moving equipment. Equipment of the mentioned type is kept outside and abuts the subject property. There is also a two-car garage at the rear (north) of the property. East of the Latex Rent-All is a large, almost completed shopping center. It extends eastward to East Prairie Street, a diagonal street running southwest to northeast. The total area of the shopping center is 138,000 square feet of which 41,000 square

feet has a one-story masonry building thereon. Twenty-seven thousand square feet of the building will contain a National Tea food store; the remaining area will be occupied by two to five small retail stores. East of the shopping center, on the northeast corner of Church and East Prairie, is a neighborhood shopping center composed of a series of small stores. They include Honduras Inn, White House Beverage Store, Horejs Decorating and Trilling Tiles. Just north of the White House Beverage Store is a landscaping enterprise and Pellfacs, Inc.

On the south side of Church Street, beginning at the seven multiple dwelling units across from the subject property and running east, there is a commercial enterprise and then a piece of vacant property which extends to the northwest corner of Church and East Prairie. Continuing east, across East Prairie, there is another series of small retail establishments, i.e., Al's Foods, Skokie Harem, Presentation, Drapery Magic, Apparel Shop, Devonshire Corp., a vacant store and Murphy's Food and Liquor. These stores lie directly south of the series of small retail establishments noted above.

East of the B-1 district are areas zoned R-3 Two Family Residence and R-1 Single Family Residence. With only an occasional exception both areas are built up in compliance with their respective zoning classifications.

The testimony given at the trial is as follows:

Benjamin Weiss testified for the plaintiffs. He is a licensed real estate broker and a builder-developer associated with Katz-Weiss Construction Corporation, one of the plaintiffs in this action. The monthly rental for the one-bedroom units in the proposed structure will be $200; for the two-bedroom units $250 to $300. The Katz-Weiss Construction Corporation has contracted to purchase the property for $200,000, subject to rezoning to R-4 Multiple Dwelling District.

Daniel Lenoble testified for the plaintiffs. He is a licensed architect doing business in Skokie, and the company with which he is associated is the architect for the proposed structure. The building will be about 120 feet from the north boundary of the property with parking spaces up to ten feet thereof. The ten feet will be landscaped. The front yard will be 27 to 35 feet; the side yard, along Drake Street, will be ten feet; and the east side yard will be 44 feet.

George Kranenberg, a planning and zoning consultant for 36 years, was called by the plaintiffs. After describing the site and the surrounding zoning districts and land uses, he stated that in his opinion the highest and best use of the subject property is for a multi-family dwelling in the R-4 classification. In reaching his opinion he considered the surrounding uses and zoning as they related to the subject site. He noted that the

subject property is directly across the street (north) from a series of seven structures having four dwelling units each; the land density of these structures is comparable to that permitted under R-4 zoning; these units are non-conforming uses in the B-1 district. He also noted that the subject site abutted the Latex Rent-All to the east, "a commercial use of the lowest nature with outdoor storage of equipment, * * *." He believed that the subject site was unsuitable for retail development; "All the retail uses * * * [are] more oriented around [the area to the east] East Prairie Street and Church rather than Drake and Church." The proposed structure would provide a good division between the shopping district to the east and the single family uses to the west and north, a "buffer" as used in modern zoning. The portion of the subject property zoned R-1 is unsuitable for single family residential development due to its proximity to the B-1 district and the fact that lot depths would be shallower than the single family homes to the north, 75 feet as opposed to 125 feet. On cross-examination Kranenberg stated that he didn't know where the nearest R-4 zoning classification in the Village was but that none was shown on the map he prepared which encompassed about six north and south streets and four east and west streets. In his opinion the subject property will never be developed for B-1 uses under existing circumstances; the Rent-All property lying between the shopping center and the subject property is a barrier for development, closing it off from the retail area to the east by a "heavy commercial use, which bears no relationship to the uses to its east, * * *." If the Rent-All were removed, Kranenberg would then be of the opinion that some of the property on the east portion of the site could be developed under B-1, "but as far as the rest of the area as it is related to Drake Street, * * * the establishment of dwelling units would be a better transition to the single family homes to the west." In 1967 Kranenberg testified as an expert witness in *Exchange Nat. Bank v. Village of Skokie*, 86 Ill.App.2d 408, 229 N.E.2d 913, wherein plaintiffs sought a declaratory judgment allowing them to construct a gasoline station on the southwest corner of East Prairie and Church. In *Exchange* Kranenberg stated that the highest and best use for that property was for a gasoline station even though it was a heavier use than permitted in a B-1 area. His opinion rested on the character of surrounding land uses which were largely heavy commercial (as opposed to retail) in nature. However, due to the construction of the National Tea complex and the elimination of certain nearby heavy commercial uses, Kranenberg would now be of the opinion that a gasoline station was not the best use for the southwest corner of Church and East Prairie.

Neil King, a licensed realtor in Skokie serving as a broker and appraiser

for 12 years, testified for the plaintiffs. After describing the land uses surrounding the subject site, he gave his opinion that the highest and best use of the property "from a Real Estate and appraisal point of view" is R-4 Multiple Dwelling. He considered the townhouses across the street (to the south), the fact that the property lies between a retail district and single family residences, and the non-conforming use (Latex Rent-All) to the immediate east. Even if this non-conforming use were eliminated, his opinion would remain the same since the permitted uses under B-1 would affect the traffic, lighting and noise in the area and therefore adversely affect the single family residences to the west. In his opinion the property is worth $160,000 as presently zoned but would have a value of $320,000 if the declaratory judgment were granted; there is an exceedingly high demand for apartments in Skokie and at this location. There has been a large turnover in occupancy in the retail stores to the east during the past few years; several stores are currently vacant. "This has not been a strong retail location." The B-1 zoning near this area of Church Street has a depreciatory effect upon residential property in the area, partly due to the nature of some uses (two liquor stores) and the non-conforming uses; if the subject property were developed under B-1, it would continue this depreciatory effect. He believes that the portion of the subject site zoned B-1 "would be one of the last kinds of B-1 property to be developed in the Village." The portion zoned R-1 is inappropriate for residential development since the lots are too shallow; they would have "virtually no backyard." On cross-examination he stated that if the subject site is developed under B-1 zoning, the surrounding residential property would be worth less than if the construction of the proposed structure is allowed.

Jared Shlaes testified for the defendant. He is a real estate consultant, appraiser and developer. He is familiar with the subject site and the surrounding zoning and land uses. It was his opinion that as presently zoned the site has a fair market value of $150,000. He gave no opinion as to the value of the property if zoned R-4 nor to its highest and best use.

James Arnold testified for the defendant. For two years he has been the Director of Skokie's Planning Department. He stated that the two-story, four flat buildings just south of the subject property are 21 to 25 feet high and are no longer built in the Village. He believed that the bulk and number of occupants in the proposed building "would be overwhelming in relationship to the existing * * * multi-family districts within the general area" which generally are three or four-flats. In his opinion the highest and best use of the property, even that portion zoned R-1, is B-1 Service Commercial. He reached this opinion because

there is no R-4 district within "any reasonable distance of the subject property." Also, the proposed building would not require a six foot masonry wall separating it from residential usage as is required under B-1. The proposed building would adversely affect the light, air and ventilation of the residences on the west side of Drake Street. Current zoning allows buildings with heights of 25 feet in B-1 districts and 30 feet in R-1 districts. The proposed site is 36 feet. The ultimate objective of the Village is the eventual abatement of all non-conforming uses. He believed that the Latex Rent-All, a non-conforming use, will cease business in January 1971. On cross-examination Arnold stated that the proposed structure would be only six feet higher (36 feet) than a building which could be built on the portion of the site zoned R-1; that this six foot differential was not the essential reason the proposed structure would have an adverse effect upon the homes to the west; rather, "[t]he actual type of construction would create the nuisance." He believed the residential homes to the north would be adversely affected due to the planned area for parking at the north end of the subject site. There could, however, be rear area parking under B-1 zoning but, as the witness characterized it, "not entirely" as it would under the proposed project. He didn't know whether the proposed structure would cause more traffic than if developed under B-1 but admitted that neighborhood shopping centers do generate a good deal of traffic. He believed that the lack of R-4 zoning in the area was one reason for not allowing construction of the proposed structure but that he wasn't suggesting that it is never good zoning practice to have a zoning classification introduced into an area for the first time. On redirect Arnold stated that an exhibit he prepared showed the subject site to be well over a mile from the nearest R-4 district.

Thompson Dyke testified for the defendant. He is an associate partner in a Chicago firm engaged in city planning and zoning consultation. His firm has been intimately involved in preparing a comprehensive zoning plan for the defendant Village. It is his opinion that the highest and best use of the subject site would be for a neighborhood commercial development under the B-1 zoning classification. His reasons were that the area to the east is developed as neighborhood commercial, that the trend of development within the neighborhood is of a single family character and that there is little mixed type land use throughout the community. He fears that if the subject site were rezoned R-4, it could affect other vacant land in other zoning districts throughout the Village.

OPINION

■■ The general principles that have evolved to test the validity of a

zoning ordinance as it applies to a given parcel of land were stated in *Marquette Nat. Bk. v. County of Cook,* 24 Ill.2d 497, 501, 182 N.E.2d 147, 149, 150:

"In substance, each case must necessarily be decided on its own particular facts taking into consideration the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished and the relative gain to the public as compared with the hardship imposed upon the owner. A zoning classification will be upheld if it bears a substantial relation to the public health, safety, comfort, morals and welfare. Where the question of its reasonableness * * * is subject to fair difference of opinion, the legislative judgment * * * should be followed. The presumption of validity is overcome, however, when it is shown that there is no reasonable basis in public welfare requiring the restriction and the resulting loss. Where the gain to the public is small as compared to the hardship imposed upon the owner, no valid basis for the exercise of police power exists. *Liebling v. Village of Deerfield,* 21 Ill.2d 196."

In the instant case there is no dispute that plaintiffs will suffer a severe financial loss if the declaratory judgment is denied. The evidence showed that the property, as presently zoned, is worth $150,000 to $160,000. Plaintiffs Anthony and Dorothy Schmitt are to receive $200,000 to $220,000 (depending on the date of closing) under the purchase contract with plaintiff Katz-Weiss Construction Corporation; and the fair market value of the property if the proposed construction is allowed is $320,000.

Therefore, it becomes necessary to determine whether the preservation of the existing B-1 and R-1 zoning classifications bears a substantial relation to the public health, safety and welfare since, as stated in *La Salle Nat. Bank v. County of Cook,* 12 Ill.2d 40, 47, 145 N.E.2d 65, 69:

"It is not the mere loss in value alone that is significant, but the fact that the public welfare does not require the restriction and resulting loss."

■■ We believe that the public welfare does not require the present restrictions and resulting loss and that, therefore, the relief plaintiffs seek should be granted.

Plaintiffs presented two expert witnesses both of whom stated that the highest and best use of the subject site was R-4 Multiple Dwelling. The reasons they gave in support of their opinions are persuasive and essentially went uncontradicted by defendant's experts. Directly south of the subject property is a series of seven buildings, each containing four dwelling units. The land density of these buildings is compatible with the standards of the R-4 classification and is in fact greater than the land density of the proposed structure. Although the proposed structure

will contain many more units than these seven buildings, their presence, in terms of land use and density, does make the proposed structure more compatible with the surrounding area.

Neil King, one of plaintiffs' experts and a local realtor, stated that a further westward continuation (from the intersection of East Prairie and Church Streets) of land uses consistent with the present B-1 zoning would have a depreciatory effect upon the value of the single family residences to the west and north; in fact, construction of the proposed structure would have a beneficial effect upon the surrounding homes. The reason he gave for this effect was that the proposed structure would separate these homes to the west and north from the retail area to the east. "They [the homeowners] would know that they were not going to have a commercial building, a retail building on that property."

Finally, both of the plaintiffs' experts stated that the portion of the subject site zoned R-1 was unsuitable for residential development due to the shallowness of the lots upon which the homes would have to be built. The portion zoned B-1 was unsuitable for purposes consistent with the B-1 classification due to two factors. First, the retail enterprises in the core of the B-1 district (the area surrounding the intersection of East Prairie and Church) had a large turnover rate in occupancy and currently there are several vacancies in existing stores. The land on the southwest corner is vacant. King characterized the area as not being a strong retail location. Second, the possibility of establishing a successful B-1 enterprise lessened as one moved westward from the core of the district. George Kranenberg stated that the retail uses were more oriented to the area formed by the intersection of East Prairie and Church rather than the area to the west where the subject property lies.

Defendant's expert James Arnold objected to the construction of the proposed structure because it would introduce a new zoning classification into the district and would have an adverse effect on the light, air and ventilation of the surrounding residential homes. As to the former factor Arnold, on cross-examination, stated that introducing a new zoning pattern in an area is not always a bad practice. As to the latter factor he conceded that the proposed apartment building would be only six feet higher than homes which could be built directly across the street from these residences under the present zoning of the property; that this six foot differential would not cause detriment to the homes; but rather, "the structure itself would create the nuisance." He objected to the parking spaces that would be placed at the rear (north) of the property but admitted that some type of rear parking would be allowed if the site were developed under B-1.

Thompson Dyke, defendant's other expert, admitted that the core of

the B-1 district was to the east, surrounding the intersection of Church and East Prairie. He was primarily concerned with the effect on other vacant parcels in the Village if the declaratory judgment were granted but acknowledged that each zoning case is decided upon the circumstances peculiar to the specific case.

After a careful review of the testimony, we believe the following language from *Pioneer Trust & Savings Bk. v. McHenry County,* 41 Ill.2d 77, 85, 241 N.E.2d 454, 459, is applicable:

"In our judgment plaintiffs here have sustained the burden of proving that the * * * County zoning ordinance is arbitrary and unreasonable as applied to their property because the gain to the public, if any, is small compared to the hardship imposed upon the plaintiffs by the zoning restriction."

See also *La Salle Nat. Bk. v. City of Park Ridge,* 23 Ill.2d 239, 244, 177 N.E.2d 837.

■■ Defendant argues that we must consider that plaintiffs Anthony and Dorothy Schmitt purchased, and the Katz-Weiss Construction Corporation is purchasing, the subject property in face of the existing zoning classifications. However, it is well established that this does not estop them from challenging the validity of the restrictions (see *La Salle Nat. Bk. v. Vil. of Harwood Heights,* 2 Ill.App.3d 1040, 1047, 278 N.E.2d 114). It is only a factor to be considered, one which we feel is not persuasive when considered along with the evidence relating to the loss in value to plaintiffs, the beneficial effect of the proposed structure on the surrounding single family residences and the unsuitability of the site for uses consistent with the present zoning classifications.

Finally, defendant cites *Exchange Nat. Bank v. Village of Skokie,* 86 Ill.App.2d 408, 229 N.E.2d 913, in order to show that the Village has "sought to preserve the integrity" of the B-1 district involved in the instant case. In *Exchange* we reversed a judgment of the circuit court granting plaintiffs the right to construct a gasoline station on the property located at the southwest corner of Church and East Prairie. Then, as now, the site was zoned B-1. It is sufficient to say that the *Exchange* case is distinguishable on its facts from the instant case. In *Exchange* plaintiffs sought to construct an enterprise which was a heavier commercial use than was permitted in the B-1 district. In the instant case plaintiffs' structure will tend to upgrade the area, specifically the residential area surrounding Church and Drake Streets. In *Exchange* there was testimony that the proposed gas station would adversely affect the values of the surrounding single family residences. In the instant case the proposed use will have a beneficial effect on the surrounding homes.

Finally, in *Exchange* the subject site was at the center of the B-1 district. In the instant case the subject site lies at the western boundary of the B-1 district.

The decision of the circuit court is reversed with directions to enter judgment for the plaintiffs.

Reversed and remanded with directions.

LORENZ, P. J., and ENGLISH, J., concur.