CHICAGO TITLE & TRUST COMPANY, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF SKOKIE, Defendant-Appellant.

First District (1st Division)   No. 77-100

Opinion filed June 19, 1978.

Harvey Schwartz, Corporation Counsel, of Skokie, for appellant.

Marks, Marks and Kaplan, of Chicago, for appellees.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County holding the zoning ordinance of the Village of Skokie invalid as applied to plaintiffs' land and authorizing construction on that land of a multifamily, four-story building with up to 51 apartment units. For the reasons stated below, we affirm.

The subject property, located on the north side of Church Street between Drake Avenue and East Prairie Road in the Village of Skokie, is held under Trust No. 52404 by Chicago Title and Trust Co. for the benefit of Edward J. Sackley, Joseph A. Kogen and Harold H. Sitron. It is narrow and deep, measuring 146 feet in width and approximately 366 feet in length, and is more fully described as:

"The East 146.0 feet of the West 737.0 feet of Lot 11 in County Clerk's Division of the Northeast quarter of Section 14, Township 41

North, Range 13, East of the Third Principal Meridian in Cook County, Illinois."

This property is currently zoned in the B-1 Service Commercial District under the Skokie Zoning Ordinance, and the two buildings situated on it are used for commercial purposes.

The plaintiffs petitioned Skokie for a rezoning of the property to permit development of a 4-story apartment building containing 51 units, a use compatible with Skokie's then-existing R-4 zoning classification. The petition was denied and this action was commenced. Subsequently, Skokie abolished its R-4 zoning classification.

The land uses and zoning districts surrounding the subject property were found by the trial court to be as follows:

"The entire North side of Church Street, including the subject property, beginning with the corner parcel on the Northeast corner of Drake and Church Street and extending East therefrom beyond East Prairie Road to Ewing Avenue on the East is zoned B-1, Service Commercial District, within which districts are found the following existing and/or permitted uses; the Northeast corner of Drake and Church Streets contains a parcel approximately 81,145 square feet in size which abuts the West line of the subject property and contains a single-family structure with a rear garage. This parcel may now, by reason of a declaratory judgment entered on May 4, 1973, and thereafter amended by the Circuit Court of Cook County in the case of *Schmitt, et al. v. Village of Skokie,* No. 69L 3362, pursuant to Opinion and direction of the Appellate Court on May 5, 1972, in Appellate Court Case No. 55338, reported 6 Ill. App. 3d 177, 285 N.E.2d 202, be used for a use consistent with the R-4, Multi-Family Residential Zoning classification under the Skokie Zoning Ordinance as in effect at the time of the filing of this cause, to wit: a four-story multi-family building, 36 feet in height with 80 apartments consisting of such apartment mix as the builder shall elect, with no less than 160 parking spaces, of which 128 are to be underground.

To the East of the subject property is a larger parcel up to and including the Northwest corner of Church Street and East Prairie Road, upon which is a shopping center about seven years old with a major chain food store and other commercial uses. Although the last of the stores in that center has, after a seven-year vacancy, been recently rented at a rental less than that generally charged for commercial facilities in the Village of Skokie and particularly those in proximity to a major chain food store, there were from time to time within the center vacancies of long standing. On the Northeast corner of East Prairie Road and Church Street are

several retail uses, including a retail liquor store and a variety of small stores.

On the North side of Church Street, beginning at the Northeast corner of Church Street and Ewing Avenue and extending to the East boundary of the Village is an area zoned R-3 for two-family residential use also containing two attached townhouses.

Immediately across from the subject property on the South side of Church Street beginning at Drake Avenue and extending Eastward to Ewing Avenue is an area zoned B-1 in which are located seven residential structures, each containing four townhouses or apartments consisting of 28 units in total of a density of approximately 1,300 square feet of lot area per unit, a density comparable to that formerly permitted under the R-4 zoning category of the Skokie Zoning Ordinance. At the Southwest corner of East Prairie Road and Church Street are some service facilities and on the Southeast corner extending to Ewing Avenue is a strip of retail stores (some vacant) of various uses, including a liquor store.

Directly to the East of the afore-described B-1 area on the South side of Church Street, beginning at Ewing and extending to the Village limits on the East and in part to Davis Street and in part to Dempster Street on the South is an area zoned R-3 for two-family residences and so used.

On Ewing Avenue North of the B-1 zone is an area zoned R-3 and developed with two flats. To the North and West of the subject property is an area zoned R-1, Single-Family and so used."

At trial, plaintiff Edward J. Sackley testified that in January 1974, he lost the prior tenant of the subject property because of, among other things, objections by the Village of Skokie regarding the tenant's alleged misuse of the property. Sackley stated that he made extensive efforts to find a new tenant, offering to build to suit, but no suitable commercial tenant could be found and the property remained vacant for 10 months. In October 1974, according to Sackley, he rented the property to the present tenant at a rental of about half that paid by the previous tenant and providing income not much greater than the tax and insurance costs associated with the property. Because the property is mortgaged, he stated, he is losing money.

Sackley conceded on cross-examination that he and his partners were aware in 1968 when they purchased the property of its B-1 zoning status and that they had intended from the start to seek a rezoning of the site.

Daniel Le Noble, a registered architect, testified for the plaintiffs. He stated that the proposed development was designed as a condominium

and that condominiums included more amenities than normally are provided in a rental type building. These include public meeting areas with kitchen facilities and public washrooms. The units, he stated, are anywhere from 15 to 25 percent larger in area than an equivalent rental unit. He described the proposed development as a 4-story structure with a total of 51 units; 9 one-bedroom apartments and 42 two-bedroom apartments. Density and height of the building proposed did comply with the provisions of the 1974 Skokie R-4 Zoning Ordinance. 102 parking spaces are proposed and that is one more space than was required under the prior Skokie ordinance.

Rolf C. Campbell, a city planner and zoning consultant whose qualifications as an expert witness were stipulated, also testified for the plaintiffs. He stated his opinion that the use proposed by the plaintiffs would constitute the highest and best use of the subject property. He based his opinion on the suitability of the site itself, the compatibility of such a use with the use permitted for the property immediately to the west and the shopping center to the east. He also considered access to the property, the effect of the use on the neighborhood and the need for multifamily residences in the village.

On cross-examination, Campbell conceded that the property could physically be developed under B-1 zoning, but stated that there appears to be no great demand for such use, citing the extended period of time required to fully rent the adjacent shopping center.

Neil King, an experienced real estate broker whose qualifications as an expert witness were stipulated, provided further details of the difficulties the adjoining shopping center had in finding tenants. He stated that, although that shopping center was built in 1970, one of the stores in it was not rented until 1976, and other stores had experienced prolonged vacancies. The last unit to be rented, he said, was leased for 30 to 40 percent less than the rental of equivalent space at other shopping centers in the village. King also stated that the proposed apartment building use for the subject property would be the highest and best use of the land in view of the good market for condominium units in the area and the narrowness of the site. He also said that the uncertain prospects for commercial use of the subject property had adversely affected development of adjacent land, whereas the proposed use for the site would immeasurably enhance the property to the west. Finally, King stated his opinion that development of the property under B-1 zoning was unlikely and economically impractical because of its shape and size and the lack of demand for commercial property in the area.

Other witnesses testified that permitting the proposed apartment use of the site would dramatically increase its market value.

For the village, Thompson A. Dyke, a city planner, testified that there were no commercial property vacancies in the area at present and that the trend of development in the surrounding commercial district was in accordance with the village's comprehensive plan. He stated that the proposed use for the site would not be its highest and best use because it was sandwiched between two commercial sites. He also objected to the density of the proposed use. On cross-examination, however, he conceded that the land just west of the subject property had been freed by a court decision for a residential use, so that the subject property was not necessarily sandwiched between commercial sites.

Also testifying for the village was Robert Molumby, village director of planning, who pointed out that the R-4 zoning classification which permitted such dense residential uses as that proposed by plaintiffs had been abolished, so that additional development would not strain municipal services. He stated that the proposed development did not conform with the village's comprehensive plan and would have an adverse effect on public health, safety and welfare, because municipal services in that area were not designed to accommodate such a development. The result, he said, would be an over-use of such services.

On cross-examination, however, Molumby admitted that he did not know which, if any, of the municipal services required for the proposed development would be over-burdened.

One other witness testified against plaintiffs' proposed use. James T. Schmitt, a resident of the village and president of the Northeast Skokie Property Owners Association, objected that it would increase traffic in the area, strain the sewage system and aggravate local flooding problems.

The picture that emerges from this testimony is one of an effort by zoning to spur commercial development in an area where there is no demand for such development. The painfully slow progress of the shopping center to the east of the subject property, together with plaintiffs' difficulties in finding suitable commercial tenants, indicate that, despite 10 years of commercial zoning in this area, the conditions for successful commercial development of the remaining undeveloped land have not been met.

It was this general state of facts which prompted this court in *Schmitt v. Village of Skokie* (1972), 6 Ill. App. 3d 177, 285 N.E.2d 202, to declare Skokie's zoning ordinance placing the property immediately west of plaintiffs' in the B-1 zoning district void as applied to that property. That land, however, directly adjoined residential property further west, and because each zoning case must be decided on its own facts (*Marquette National Bank v. County of Cook* (1962), 24 Ill. 2d 497, 501, 182 N.E.2d 147, 149-50), it is necessary to examine whether the particular facts of this case justify a similar result.

■■ A threshhold question has been raised by the Village of Skokie by its allegation that, because plaintiffs purchased the subject land with full knowledge of the existing commercial zoning, they cannot demonstrate any hardship caused by this zoning classification. The argument appears to be that, the hardship having been assumed voluntarily, plaintiffs cannot be heard to complain of it. Certainly, this is a factor to be considered where a plaintiff bases his challenge primarily on a claim of severe economic hardship not offset by major benefit to the public, but this does not estop a property owner from challenging the validity of zoning restrictions by demonstrating their unreasonableness. *Schmitt v. Village of Skokie* (1972), 6 Ill. App. 3d 177, 186, 285 N.E.2d 202, 208; *La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill. App. 3d 1040, 1047, 278 N.E.2d 114, 118.

■■ Proceeding to the basic issue of the validity of the zoning of this property, a zoning classification will be upheld if it bears a substantial relation to the public health, safety, comfort, morals and welfare. And if its reasonableness is subject to fair difference of opinion, the judgment of the legislative body will be deferred to and the classification upheld. But where it is shown that there is no reasonable basis in public welfare requiring the restriction and that the restriction imposes a loss on the owner, or where the gain to the public is small and the hardship to the owner is great, a zoning classification is not properly based on the police power and will not be upheld. *Marquette National Bank v. County of Cook* (1962), 24 Ill. 2d 497, 501, 182 N.E.2d 147, 149-50.

In the present case, plaintiffs have shown clearly that the B-1 zoning classification imposes an economic hardship on them. Were there a basis in public welfare for this restriction, it would be necessary to balance the benefit to the public against this hardship, but the evidence in this case indicates that there is no substantial relation between this zoning classification and the public good.

Plaintiffs presented evidence that continued enforcement of B-1 zoning of their property would result not only in economic loss to them but also in continued under-utilization of a character that would cause the property to be a source of concern rather than benefit to surrounding property owners. The village was unable to offer any substantial evidence that continuation of B-1 zoning as to this subject property would in any way benefit either the public at large or the immediate neighborhood. Although it was asserted that the subject property should remain under B-1 zoning because it was sandwiched between commercial sites, it was admitted on cross-examination that the only land restricted to commercial use adjoining the property was to the east.

■■ The evidence thus shows no gain to the public from this restriction, while it shows a hardship to the owners of the property. Accordingly, it

cannot be said that the trial court erred in holding the B-1 zoning classification invalid as applied to plaintiffs' property.

The next issue presented is the trial court's granting of the relief sought by plaintiffs of a declaration that they or anyone claiming through them have the right to make the use they have proposed for the subject property. The village argues, among other things, that such a use cannot be permitted because it has abolished its R-4 zoning classification which would have permitted construction of such an apartment building and that none of its remaining zoning classifications permit such dense residential uses.

■■ This argument presumes that the court, in considering whether to permit the requested use, is in effect choosing which of the village's zoning classifications to apply to the property. On the contrary, such a treatment of this issue would constitute amendment of the village zoning ordinance, a practice expressly forbidden to the courts. See *Reeve v. Village of Glenview* (1963), 29 Ill. 2d 611, 195 N.E.2d 188.

The proper role of the court in such cases is simply to determine whether the reasonableness of the proposed use has been established, and if so, grant the relief requested. *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378, 167 N.E.2d 406, 411.

In the present case, plaintiffs have shown that their proposed use would enhance the surrounding neighborhood by eliminating concern regarding the character of commercial use to which the site may be put. Evidence was also produced showing that a demand for apartments exists which would be met by the proposed development. In the face of such evidence of reasonableness, there was no substantial evidence indicating the proposed use was unreasonable. A local resident expressed misgivings about the effects of the proposed building, as did an expert witness, but no evidence was produced to show that these adverse effects were likely to actually occur.

■■ In view of this, we find that the trial court properly found that the proposed use was reasonable and did not err in granting plaintiff's requested relief.

For these reasons, the judgment of the court below is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.